[No. B015864. Second Dist., Div. Two. Dec. 24, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
EARL L. MARTINSON et al., Defendants and Appellants.

COUNSEL

Earl L. Martinson and Albert N. Baxter, in pro. per., for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Lawrence P. Scherb II, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**COMPTON, Acting P. J.**—At the behest of the Commissioner of the Department of Corporations (Commissioner), the Attorney General instituted a civil action against defendants Earl L. Martinson and Albert N. Baxter, among others, for both injunctive relief and disgorgement of commissions arising out of the sale of certain unqualified securities. After a court trial in which defendants appeared in propria persona, a judgment was entered enjoining them from selling the securities in question and decreeing that Martinson and Baxter be required to disgorge their sales commissions of $230,000 and $1,500 respectively. The judgment further

ordered that the commissions be deposited in a trust fund to be disbursed to investors who had purchased the securities. This appeal by Martinson and Baxter follows.[1] We affirm.

The facts are not in dispute and may be briefly summarized as follows: During the 1977 oil crisis, defendants engaged in a national program to sell subleases in coal fields located in Wyoming. The subleases were sold by various corporations which promised investors that not only would the coal fields provide them a return on their investment, but also sizeable tax benefits. Nationally, some 1,400 persons invested in the program, generating approximately $40 million in sales. It appears, however, that no coal was mined.

Defendants were part of the California sales force. Baxter worked as a salesman and Martinson was a regional sales manager and wholesaler. They each received between 10 and 15 percent of the price of the subleases they sold as their commissions. Beginning in late 1977, the Commissioner, pursuant to Corporations Code section 25530,[2] initiated numerous civil actions against those persons involved in selling the subleases in the state. On May 15, 1980, a complaint naming a number of defendants, including Martinson and Baxter, was filed. Subsequently, the complaint was amended on July 30, 1982.

The first cause of action alleged that defendants sold coal subleases, that said subleases were securities within the meaning of the Corporate Securities Act of 1968 (Act), and that the securities had not been qualified thereunder.[3]

---

[1]On appeal, defendants also appear without counsel. Baxter has adopted Martinson's opening brief.

[2]Unless otherwise indicated, all further statutory references are to the Corporations Code. As it appeared in 1977, section 25530, in relevant part, provided: "(a) Whenever it appears to the commissioner that any person has engaged or is about to engage in any act or practice constituting a violation of any provision of this law or any rule or order hereunder, he may in his discretion bring an action . . . to enjoin the acts or practices or to enforce compliance with this law or any rule or order hereunder. . . . [¶] (b) The commissioner may . . . include in any action authorized by subdivision (a) of this section a claim for restitution or damages under Chapter 1 (commencing with Section 25500) of this part on behalf of the persons injured by the act or practice constituting the subject matter of the action, and the court shall have jurisdiction to award appropriate relief to such persons, if the court finds that enforcement of the rights of such persons by private civil action, whether by class actions or otherwise, would be so burdensome or expensive as to be impractical."

[3]Section 25110 makes it "unlawful for any person to offer or sell in this state any security in an issuer transaction (other than in a transaction subject to Section 25120), whether or not by or through underwriters, unless such sale has been qualified under Section 25111, 25112 or 25113 (and no order under Section 25140 or subdivision (a) of Section 25143 is in effect with respect to such qualification) or unless such security or transaction is exempted under Chapter I (commencing with Section 25100) of this part."

The fourth cause of action charged that defendants had violated section 25401[4] by either misrepresenting to or concealing from potential investors, or omitting material facts concerning the legality of selling the leases, the leases' tax consequences, and the costs involved in the sales transactions.

In its minute order of May 23, 1985, the trial court stated: "[That defendants] during and after the summer of 1977 sold in California the coal lease interests in question, in violation of Corporations Code Section 25110, that said interests constituted securities under the California Corporate Securities [which] were sold as part of a public offering. In addition the court finds that [defendant Baxter] did not hold required licenses from the Division of Corporations at the time of said sales."

On this appeal, defendants contend that the Commissioner was time barred from instituting the within action and that he lacked statutory authority to seek disgorgement. We disagree.

■ Turning to the statute of limitations issue first, we note that part 6, chapter 1 of the Act contains various limitation periods for specific securities violations. (See §§ 25506, 25506.1, 25507, 25508.) None of these limitations, however, makes reference to civil actions brought by the Commissioner pursuant to section 25530. In light of this omission, defendants contend that we should "apply the most analogous statutes of limitations—those for private actions for the same securities law violations." Thus, under defendants' theory, the Commissioner was prevented from bringing the action because a private person suing for the same relief would have been time barred by the limitations period found in section 25507, subdivision (a). That section explicitly bars a private action to recover damages or consideration paid for the purchase of unqualified securities pursuant to section 25503[5] "unless [the action is brought] before the expiration of two years after the violation upon which it is based or the expiration of one year after the discovery by the plaintiff of the facts constituting such violation, whichever shall first expire." (§ 25507, subd. (a).)

---

[4]Section 25401 provides "It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

[5]Section 25503 delineates under what conditions a purchaser can sue in a private action in order to receive restitution or damages for purchases of unqualified securities.

Defendants argue that they cannot be held liable under the Act because, on the face of the complaint, both the limitation periods set forth in section 25503 have expired. This contention is based, however, on the erroneous belief that an action under section 25530 is in the nature of a class action with the Commissioner as the lead plaintiff. The assumption is wrong.

■ In discussing Business and Professions Code section 17535 which, like the statute in question, empowers government officials to seek injunctive relief and restitution against defendants who partake in illegal sales practices, our Supreme Court in *People* v. *Pacific Land Research Co.* (1977) 20 Cal.3d 10, 17 [141 Cal.Rptr. 20, 569 P.2d 125], stated: ". . . [W]e do not agree that consumer protection actions brought by the People, seeking injunctive relief, civil penalties and restitution, are the equivalent of class actions brought by private parties, requiring the same safeguards to protect a defendant from multiple suits and other harmful consequences. [¶] An action filed by the People seeking injunctive relief and civil penalties is fundamentally a law enforcement action designed to protect the public and not to benefit private parties. The purpose of injunctive relief is to prevent continued violations of law and to prevent violators from dissipating funds illegally obtained." ■ The Commissioner's right to sue is therefore independent of any individual investor's cause of action.

■ Moreover, the drafters of the Act never intended that the shorter limitations period for private actions would be applicable to actions brought in the name of the State. The two-year limitation was "imposed to prevent purchasers from employing the remedies for violation of the qualification provisions to shift the risk of a bad investment to the seller. [Citations.]" (*Bowden* v. *Robinson* (1977) 67 Cal.App.3d 705, 712 [136 Cal.Rptr. 871].) While section 25503 has as its sole purpose the creation of a private right of action to reimburse purchasers of unqualified securities, clearly the intent behind section 25530 was to create a governmental cause of action to protect the public interest by enjoining defendants from similar illegal conduct in the future. Common sense dictates that a short-running limitations period intended to prevent abuse by dissatisfied investors would not be applicable to an agency whose mission is to protect the investing public as a whole. ■ Therefore, since neither the Corporations Code nor the Code of Civil Procedure specifically provides a limitation period for section 25530,[6] a suit

---

[6]At this juncture, we note that the trial court concluded that Code of Civil Procedure section 338, subdivision (1), providing a three-year statute of limitations for "[a]n action upon a liability created by statute, other than a penalty or forfeiture", was controlling. That statute, however, is inapplicable here because the nature of the relief sought is analogous to a "Penalty

in equity commenced thereto must be brought within the four-year period of the catch-all provision of Code of Civil Procedure section 343. (Code Civ. Proc., § 343; See *Moss* v. *Moss* (1942) 20 Cal.2d 640, 644 [128 Cal.Rptr. 526, 141 A.L.R. 1422].) Because the Commissioner commenced the action against defendants in May 1980 for security violations which occurred throughout the summer of 1977, the lawsuit proceeded within the prescribed limitation period.[7]

■ We next address defendants' contention that the Commissioner lacked authority under section 25530 to seek disgorgement of the sales commissions. At the time of the proscribed conduct section 25530 did not contain, as it does today, a provision for disgorgement, but only empowered the Commissioner to sue for "restitution or damages" on behalf of the injured investors. The term "disgorgement" was added to the statute by a 1981 amendment. Relying upon the legislative history of section 25530, defendants contend that the amendment was intended to expand past law and, therefore, could only be applied prospectively.

We, however, need not go beyond section 25530 as it was originally enacted to conclude that the disgorgement amendment was only declarative of existing law. Long before the amendment in question, the Commissioner could initiate an action seeking restitution of unlawfully earned commissions. ■ Black's Law Dictionary (5th ed. 1979) page 1180 defines restitution as restoration of the status quo by the awarding of an "amount which would put plaintiff in as good a position as he would have been if no contract had been made and restores to plaintiff value of what he parted with in performing the contract." (See also *Securities & Exchange Com'n.* v. *R. J. Allen & Assoc., Inc.* (S.D. Fla. 1974) 386 F.Supp. 866, 880, wherein it was stated "In dealing with plaintiff's prayer for disgorgement, this Court equates disgorgement with restitution and recoupment which are equity remedies of ancient origin.") ■ In the instant case, defendants' commissions *were part of the value* given by the investors to purchase the

---

or forfeiture." Although we disagree with the trial court's reasoning, the judgment must still be affirmed. "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].)

[7]Defendants' argument that the fourth cause of action for a violation of section 25401 also was time barred is meritless. Even a cursory reading of the trial court's minute order makes it clear that the judgment rested solely on the section 25110 violations.

subleases. Thus, whether one calls the remedy disgorgement or restitution, the Commissioner was entitled to recover the funds in question.

The judgment is affirmed.

Beach, J., and Gates, J., concurred.