[No. B178628. Second Dist., Div. Three. May 23, 2006.]

THE PEOPLE ex rel. WAYNE STRUMPFER, as Commissioner of Corporations, etc., Plaintiff, v.
WESTOAKS INVESTMENT #27 et al., Defendants and Respondents;
LAWRENCE L. MATHENEY, as County Treasurer-Tax Collector, etc., et al., Objectors and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 3, 4, 5, 6, 7, and 8 of the Discussion.

## COUNSEL

Noel A. Klebaum, County Counsel, and John E. Polich, Assistant County Counsel, for Objectors and Appellants.

Richard Weissman for Defendant and Respondent Westoaks Investment #27.

Law Offices of Roger L. Stanard and Roger L. Stanard for Defendants and Respondents Westoaks Investment #58 and Joint Venture 58.

## OPINION

**CROSKEY, J.**—This appeal involves what appears to be a question of first impression concerning a statute that addresses the cancellation of penalties imposed when property taxes are not timely paid. The case was filed by the

State of California, by and through its Commissioner of Corporations, and is based on the state's allegation that investors in certain real property limited partnerships were defrauded on a massive scale. The receiver who was appointed to oversee the assets involved in the case sought the cancellation of real property tax delinquency penalties, paid by certain of the limited partnerships to Los Angeles County and Ventura County, so that the delinquency charges could be refunded to the receivership estate. When those counties denied the receiver's request, he filed motions with the trial court, on behalf of one of the limited partnerships, for an order directing the counties to cancel the charges. Subsequently, one of the other limited partnerships moved for such relief on its own behalf as to Ventura County. Ultimately Los Angeles County (Los Angeles) settled with the receiver, but Ventura County (Ventura) did not.[1]

The receiver's motions for relief were based on Revenue and Taxation Code section 4985.2 (section 4985.2), which states: "Any penalty, costs, or other charges resulting from tax delinquency may be canceled by the auditor or the tax collector upon a finding of any of the following: [¶] (a) Failure to make a timely payment is due to reasonable cause and circumstances beyond the taxpayer's control, and occurred notwithstanding the exercise of ordinary care in the absence of willful neglect, provided the principal payment for the proper amount of the tax due is made no later than June 30 of the fourth fiscal year following the fiscal year in which the tax became delinquent. [¶] (b) There was an inadvertent error in the amount of payment made by the taxpayer, provided the principal payment for the proper amount of the tax due is made within 10 days after the notice of shortage is mailed by the tax collector. [¶] (c) The cancellation was ordered by a local, state, or federal court."[2]

The trial court determined that subdivision (c) of section 4985.2 gives a court *independent* authority to cancel tax penalties, costs and other charges and therefore a taxpayer seeking such cancellation need not invoke subdivisions (a) or (b) of section 4985.2, or any other statutory authority, to obtain that relief. The court granted the motions directed against Ventura for cancellation of tax delinquency charges, and this appeal was filed by Ventura's treasurer-tax collector, Lawrence Matheney, and its county board of supervisors.

---

[1] Ventura and Los Angeles were not named parties in the suit since they were not alleged to be connected to the fraudulent activities set out in the state's complaint. They were issued orders to show cause by the trial court pursuant to the motions for cancellation of tax delinquency penalties, and thereafter they filed responsive papers and made court appearances on that matter.

[2] Unless otherwise indicated, all statutory references are to the Revenue and Taxation Code.

The main issue raised in the appeal is whether the trial court correctly construed subdivision (c) of section 4985.2. We find it did not. We hold that subdivision (c), which was added to section 4985.2 by amendment subsequent to the original enactment of the statute, was only intended by the Legislature to *authorize* tax collectors and auditors to obey court orders directing them to cancel tax delinquency penalties, costs and other charges, and therefore such orders for cancellation must be based on some statutory authority other than subdivision (c) of section 4985.2. Subdivision (c) is not a grant of independent judicial authority to relieve taxpayers of liability for tax delinquency penalties.

### *FACTUAL AND PROCEDURAL BACKGROUND*

1. *The Complaint*

The Commissioner of Corporations (Commissioner) filed this action on March 28, 1990. Named as defendants were Olen Boyce Phillips (Phillips), several companies and partnerships bearing his name, several other companies, 36 limited partnerships entitled "Westoaks Investment," each bearing a different numerical designation (e.g., "Westoaks Investment #9, a California limited partnership"), and the Phillips Financial Group. The complaint alleges that Phillips is the general partner of the limited partnership defendants, and the president and manager and/or controlling supervisor of 10 defendant companies.

By this suit, the Commissioner sought to enjoin defendants from, among other things, operating what amounted to a Ponzi scheme, engaging in other acts of fraud and violations of state securities laws, and acting upon the real and personal property assets in their possession or under their control. The Commissioner also requested an order for payment of civil penalties by defendants for each and every one of their acts that violated corporate securities laws. A receiver was requested and Attorney Richard Weissman (Weissman) was appointed to that position on the date the suit was filed. He took control of defendant entities and has remained the receiver throughout the case.[3]

---

[3] In his declaration filed in support of his request for a judgment by default, receiver Weissman stated that in the course of his duties, he had not discovered any evidence that trust deed investors were told, at the time of their investments in the late 1980's, of the true financial situation of Phillips Financial Group and its entities and programs (PFG). Nor were they told that their investments were unsafe or significantly at risk, and that new investor money was being used to pay off old investors. Additionally, they were not informed how many trust deeds were senior to theirs. The declaration states that in some cases, "there were in excess of two hundred trust deeds senior to that investor." The receiver opined that PFG's failure to so inform the trust deed investors of those facts was a material misrepresentation or omission, and further opined that much of the trust deed money raised by PFG in the late

## 2. *The Default Judgment*

A default judgment was signed and filed on August 12, 1996. Weissman was directed to continue as receiver in the case and to submit a written plan for distribution of the defaulting defendants' assets. The court retained jurisdiction to implement the terms of its orders (past or future) and to entertain applications and motions by any party for additional relief.

## 3. *The Motions to Have Ventura Cancel Real Property Tax Penalties*

On March 4, 2004, the receiver filed a motion for an order directing Ventura to show cause why the court should not order that county to cancel all real property tax delinquency penalties, costs and other charges (hereinafter referred to collectively as penalties) resulting from a delinquency in payment of real property taxes by defendant Westoaks Investment #27. The authority cited for such relief was section 4985.2. The basis of the motion was the receiver's assertion that (1) Westoaks Investment #27 did not have any financial resources with which to timely pay real property taxes to Ventura from approximately 1985 through the date of the sale of Westoaks Investment #27's real property in April 1999, (2) like the other Westoaks Investment defendants, Westoaks Investment #27 was controlled by its general partner, Phillips, and (3) Phillips had not paid the taxes owed by the partnership.[4]

The receiver asserted that to avoid an imminent tax sale of Westoaks Investment #27's land, the accrued principal taxes and delinquency penalties claimed by Ventura for the years 1990 to 1996 were paid by a group of Westoaks Investment #27's limited partners and holders of promissory notes secured by deeds of trust encumbering Westoaks Investment #27's real property. Such payment was made in 1996 (for fiscal years 1990–1991

1980's and in 1990 was raised by use of fraudulent statements or omissions, and that encumbering partnership properties with numerous deeds of trust securing promissory notes amounted to a theft of the investors' investments.

[4] As noted *ante*, the receiver filed a similar motion directed at Los Angeles. That motion involved property belonging to other limited partnerships, not to Westoaks Investment #27. After Los Angeles filed opposition to the motion, it entered into a written stipulation for settlement with the receiver. It was agreed that the stipulated settlement would not represent, by either party, an admission of liability or validity of the other's contentions. An order on the settlement was signed and filed, pursuant to which $56,764 in tax penalties was cancelled and Los Angeles was ordered to pay that sum to the receiver for deposit into the receivership account.

through 1995–1996, in the amount of $132,579 [principal and penalties]). A similar payment had been made in 1991 for fiscal years 1984–1985 through 1989–1990, in the amount of $74,848 (principal and penalties).

According to the receiver, the Westoaks Investment #27 limited partners and note holders who contributed to the payment of the above described tax principal and penalties were, in turn, granted by the court a first priority lien on the real property owned by Westoaks Investment #27, together with interest at the rate of 12 percent. The lien was to be repaid when the property was sold. The lien granted by the court in 1996 extended to all of the limited partners and note holders who had advanced money for the payment of the tax principal and penalties, whether in 1991 or 1996. Thereafter, the $44,989 in taxes and penalties, accruing from approximately 1996 through April 1999, was paid from the proceeds of the sale of Westoaks Investment #27's real property, as was the 1996 judicial lien. Tax delinquency penalties paid to Ventura by Westoaks Investment #27 in 1991, 1996 and 1999 totaled over $90,000.[5]

In his motion for tax penalty relief, the receiver asserted that the undisputed fraud of the PFG defendants would support the court's cancellation of the tax delinquency penalties on behalf of the victim investors, and that Westoaks Investment #27's "inability to make timely payments was due to reasonable cause and circumstances beyond its control and occurred notwithstanding the exercise of ordinary care in the absence of willful neglect." According to the receiver, Westoaks Investment #27 purchased its real property (approximately 393 acres of land in Ventura) in the late 1970's or early 1980's, and thereafter, Phillips had granted to various lenders deeds of trust on one or more "lots" of land in that acreage to secure promissory notes that totaled $3.8 million, as of March 28, 1990, in *recorded* debt (over 100 recorded deeds of trust). There were also unrecorded deeds of trust that encumbered that property. The receiver asserted that because of the fraudulent

---

[5] Gross receipts from the sale of Westoaks Investment #27's real property totaled $5,208,544. In a December 2000 order of the court, the receiver was directed to disburse to the approved Westoaks Investment #27 claimants, whether they were limited partners of Westoaks Investment #27 or note holders, an amount which would represent a 100 percent recovery of the principal investment they made in Westoaks Investment #27. There were approximately 140 approved claims.

In December 2003, the receiver reported that as of October 2003 Westoaks Investment #27 had on deposit $270,742, and a final distribution "will include the distribution of surplus funds in excess of the original capital investments by the noteholders and limited partners, respectively. The distribution may be characterized either as interest or profit on their respective investments."

activities of the general partner[6] and his unilateral control of Westoaks Investment #27, the limited partners and holders of deeds of trust had no reason to know or believe that the property taxes were not being paid, nor that the encumbrances on the property were of such magnitude that an attempted sale of the property by the receiver in 1990 could not be timely accomplished.

On April 1, 2004, the trial court issued an order requiring Ventura to show cause why the court should not grant the receiver's request to cancel, under section 4985.2, subdivision (c), the delinquency penalties paid to Ventura on behalf of Westoaks Investment #27. Subsequently, another show cause hearing for relief from tax penalties, also directed at Ventura, was set pursuant to a request by a private attorney acting on behalf of defendant Westoaks Investment #58 and an entity called Joint Venture 58, which had paid tax penalties on behalf of Westoaks Investment #58.[7] Like the receiver's motion, Westoaks Investment #58's motion was based on the fraudulent scheme practiced by the PFG defendants, and it relied on section 4985.2 for statutory authority.[8]

### 4. *The Trial Court's Rulings Respecting Ventura*

On July 13, 2004, the trial court granted the motions to cancel the tax penalties imposed by Ventura on Westoaks Investment #27 and Westoaks

---

[6] In his moving papers, the receiver included a lengthy declaration setting out how those fraudulent activities were carried out.

[7] Joint Venture 58 and Westoaks Investment #58 are sometimes referred to collectively herein as Westoaks Investment #58. Asserting that Westoaks Investment #58 was dismissed from this case, Ventura challenged the right of that limited partnership to bring a motion for section 4985.2 relief. However, the record does not indicate that Westoaks Investment #58 was dismissed. It only indicates that Westoaks Investment #58 was released from the receivership in September 1992.

[8] According to a declaration filed by an Edward E. Klenner in support of Westoaks Investment #58's motion for cancellation of tax delinquency penalties, Westoaks Investment #38 was formed in 1982 and in 1983 it purchased, with $350,000 obtained from a bank, certain real property, giving the bank a promissory note for that amount which was secured by a deed of trust on the property. Then Westoaks Investment #58 was formed to raise money to pay off the bank loan, and a promissory note and deed of trust on Westoaks Investment #38's property was given in favor of Westoaks Investment #58. Later, Joint Venture 58 was formed to raise money to pay the delinquent taxes and penalties on the land that was securing Westoaks Investment #58's promissory note/deed of trust (Westoaks Investment #38's land), and Westoaks Investment #58 assigned its note and deed of trust to Joint Venture 58. Sufficient money was raised and the delinquent taxes and penalties (totaling $268,080) were paid in April 1996. When Westoaks Investment #38 could not pay off its note to Westoaks Investment #58, the Westoaks Investment #38 land securing that note was sold at a trustee's sale and a trustee's deed was recorded in favor of Joint Venture 58 in August 1997. To recoup the investments of the limited partners of Westoaks Investment #58 and the joint venture partners of Joint Venture 58, the land was sold in May 2003 for $1,345,000.

Investment #58. The court found, among other things, that (1) "The investors did not know about the conduct of the defendant until after the filing of this action. The investors were actively engaged in attempting to assist the Court in its control and management of the affected assets, directly and through the receivership."; (2) "The investors/limited partners in the limited partnerships subject to this action did not learn of the property tax delinquencies affecting their limited partnerships until after the filing of this action and were active and vigorous in their efforts with the County of Ventura to seek relief from impending tax sales. The receivership lacked the cash resources with which to timely pay the real property taxes as those taxes came due."; (3) "Ventura County did not provide direct relief deferring the tax sales of real property held by Westoaks Investment #27 and Westoaks Investment #38 in 1991, and Ventura County did not advise the Court or the receiver of availability of relief under [Revenue and Taxation Code] § 4985.2."; and (4) "In order to save their respective real properties from tax sales, the investors/limited partners of Westoaks Investment #27 and Westoaks Investment #58 (successors to real property owned by Westoaks #38) advanced the delinquent and defaulted taxes and all penalties that had accrued from approximately 1984."

Concluding that it had independent authority, under section 4985.2, subdivision (c), to cancel the tax delinquency penalties, and "broad powers over administration and protection of the property subject to the receivership pursuant to Gov. Code § 13975.1," the court cancelled tax delinquency penalties in the sums of $144,861 on behalf of Westoaks Investment #27, and $140,736 on behalf of Westoaks Investment #58.

The order canceling such penalties was signed and filed on July 30, 2004. Thereafter, this timely appeal was filed by Ventura.

## DISCUSSION

1. *Section 4985.2, Subdivision (c) Does Not Authorize Courts to Make Orders Respecting Cancellation of Delinquency Tax Penalties*

The primary issue in this appeal is whether subdivision (c) of section 4985.2 was intended to give authority to courts to issue orders canceling tax delinquency penalties. Stated another way, the issue is whether (1) subdivision (c) of section 4985.2, in and of itself, authorizes courts to order the cancellation of such penalties, or (2) the only authority that subdivision (c) provides is to authorize auditors and tax collectors to cancel delinquency penalties when ordered to do so by a court that has based its cancellation

order on some other statute or on another provision of section 4985.2. Construction of a statute is a question of law. It therefore warrants our de novo review on appeal. (*Mamika v. Barca* (1998) 68 Cal.App.4th 487, 491 [80 Cal.Rptr.2d 175].)

Citing *Edison California Stores v. McColgan* (1947) 30 Cal.2d 472, 476 [183 P.2d 16], Westoaks Investment #58 argues that when a tax statute is ambiguous, the ambiguity must be resolved in favor of the taxpayer rather than the government. However, we do not perceive that a ruling by this court that subdivision (c) of section 4985.2 was never intended to give courts independent authority to order the cancellation of tax delinquency penalties is a ruling in favor of the taxing authority of government. The construction of subdivision (c) relates to the extent of judicial authority granted by that statutory subdivision with respect to certain taxation issues, not with the authority of government to tax.

Ventura's contention that subdivision (c) of section 4985.2 was only intended by the Legislature to authorize auditors and tax collectors to cancel penalties pursuant to court orders issued under some other statute or under another subdivision of section 4985.2 is supported by the legislative history of the 1990 Senate bill (Sen. Bill No. 2791 (1989–1990 Reg. Sess.) (Senate Bill 2791)) that added subdivision (c) to section 4985.2. That history includes a May 23, 1990 memo from the Office of San Diego's County Counsel that is addressed to all counties in the state. Attached to the memo is a proposed amendment to Senate Bill 2791. That proposed amendment is essentially the language of subdivision (c) of section 4985.2. The San Diego memo notes that in bankruptcy cases, the bankruptcy court has the authority to determine tax liability and does not always give San Diego County all of the penalties claimed by the county, but the county will nevertheless be ordered to expunge its tax lien after payment. The memo states that expunging a tax lien in those circumstances will result in a cancellation of some penalties, which according the memo, "the auditor has no statutory authority to do." The memo goes on to state that the proposed amendment to section 4985.2 "will allow the auditor to cancel penalties (which will result in the lien being expunged) when less than the full amount is ordered to be paid." The addition of subdivision (c) to Senate Bill 2791 came in the June 12, 1990 amendment of that bill, which was approximately three weeks after San Diego's county counsel's office sought such an addition.[9]

---

[9] Arguably, cases other than bankruptcy matters could result in a court order that effectively requires the cancellation of delinquency penalties in whole or in part.

In addition to the San Diego memo, Ventura cites to other papers in the legislative history to support its position that section 4985.2, subdivision (c) does not independently authorize courts to cancel tax delinquency penalties. They are letters from the County Supervisors Association of California and the California Association of County Treasurers and Tax Collectors to various state legislators wherein Senate Bill 2791 is described as one which makes technical and minor *administrative* changes to the Revenue and Taxation Code.

██ Interestingly, Westoaks Investment #27 cites to a Senate Digest analysis of Senate Bill 2791 which states: "Current law *allows* the auditor to cancel penalties only when (1) failure to pay timely is due to reasonable cause, or (2) there was an inadvertent error in the amount paid. This bill provides a third exception: when cancellation of penalties is ordered by a local, state or federal court." (Italics added.) The digest then references the memo of the San Diego County Counsel's Office. This use of the word "allows" in the Senate Digest analysis and its reference to the San Diego County Counsel's memo supports Ventura's contention that the addition of subdivision (c) to section 4985.2 was only meant to authorize/allow county auditors and tax collectors to follow court orders to cancel tax penalties. Also of interest is Westoaks Investment #58's citation to a senate rules committee memo which states that Senate Bill 2791 "[w]ould *acknowledge* the cancellation of property taxes ordered by a local, state or federal court." (Italics added.) Such reference to an "acknowledgement" of court orders supports Ventura's position that subdivision (c) does *not* enable a court to make an independent order canceling a tax delinquency penalty absent the authority of some other statute or the other provisions of section 4985.2.

██ Westoaks Investment #58 is correct when it asserts that the legislative history on the addition of subdivision (c) to section 4985.2 is "meager." When we follow that meager history, however, we find that it leads directly from the May 23, 1990 San Diego County Counsel memo to the June 12 amendment of Senate Bill 2791 that added subdivision (c). Further, when we combine that history with the fact that subdivision (c) does not provide a court with standards or specifics as to when and under what circumstances it would be appropriate to permit a cancellation of penalties (such as a specific time frame for seeking penalty relief from a court, and specific factors or circumstances that would warrant cancellation by a court of tax delinquency penalties),[10] we can only conclude that subdivision (c) was meant to do no

---

[10] The trial court in this case recognized the problem created by the absence of such guidelines in subdivision (c) of section 4985.2. Prior to ruling on the motions for tax penalty relief, it directed Ventura, Westoaks Investment #27 and Westoaks Investment #58 to brief the question as to what criteria a court should use in determining whether to cancel tax penalties under subdivision (c).

more than give county tax officials the legal permission to comply with court orders issued pursuant to authority *other than subdivision (c)*. That subdivision was *not* meant to provide courts with the independent authority to make otherwise unauthorized tax delinquency penalty relief orders. Moreover, even if Westoaks Investment #58 is correct in its assertion that San Diego County Counsel's Office was wrong when it stated that county auditors lacked statutory authority to obey court orders directing cancellation of penalties, that does not change our analysis as to what was *intended by the Legislature* when it added subdivision (c) to section 4985.2. It is the intent of the Legislature that is our first concern. (*Walker v. Superior Court* (1988) 47 Cal.3d 112, 121 [253 Cal.Rptr. 1, 763 P.2d 852].)[11]

---

[11] We decline Westoaks Investment #27 and Westoaks Investment #58's invitation to find that the trial court was invested with authority, under section 13975.1 of the Government Code, to issue the order granting their requests that the tax delinquency penalties imposed by Ventura be cancelled. Section 13975.1 is found in the portion of the Government Code that addresses the government of the State of California, specifically, the Executive Department of the state.

Subdivision (a) of Government Code section 13975.1 states that it "applies to every action brought in the name of the people of the State of California by the Commissioner of Corporations . . . when enforcing provisions of those laws administered by the Commissioner of Corporations which authorize the Commissioner of Corporations to seek a permanent or preliminary injunction, restraining order, or writ of mandate, or the appointment of a receiver, monitor, conservator, or other designated fiduciary or officer of the court."

Lacking any case authority interpreting Government Code section 13975.1 to support their position, Westoaks Investment #27 and Westoaks Investment #58 contend that the trial court's order can be supported by provisions in subdivisions (e) and (f) of section 13975.1. Those provisions state: "(e) The court has jurisdiction of all questions arising in the receivership proceedings and may make any orders and judgments as may be required, including orders after noticed motion by the receiver to avoid transfers as provided in [certain provisions of section 13975.1]. [¶] (f) This section is cumulative to all other provisions of law."

Westoaks Investment #27 and Westoaks Investment #58's interpretation of subdivisions (e) and (f) of section 13975.1 is too broad. Giving a court authority to "make any orders and judgments as may be required" in a receivership proceeding does not dispense with the need for the court to exercise such authority in step with the substantive and procedural directives of statutes that address the requirements of the receivership. In that respect, its limitations are like those of section 4985.2.

Nor do we agree that Corporations Code section 25530 provides a means for validating the order canceling penalties paid to Ventura. Section 25530 is contained in the Corporate Securities Law of 1968 (Corp. Code, § 25000 et seq.). Section 25530 is a broadly worded statute which gives the Commissioner authority to bring suits in the name of the people of the state to enforce compliance with the Corporate Securities Law of 1968 and enjoin acts and practices that constitute violations of that law. Subdivision (b) of section 25530 states: "If the commissioner determines it is in the public interest, the commissioner may include in any action authorized by subdivision (a) a claim for ancillary relief, including but not limited to, a claim for restitution or disgorgement or damages on behalf of the persons injured by the act or practice constituting the subject matter of the action, and the court shall have jurisdiction to award additional relief." On its face, this appears to authorize penalizing persons who violate the Corporate Securities Law of 1968. It addresses claims for restitution, disgorgement and damages. No suggestion is made that Ventura has violated that law. Moreover, the only case cited by Westoaks Investment #27 or Westoaks Investment #58 in support of applying section 25530 to validate the trial court's order canceling the tax delinquency penalties imposed by

■ Nevertheless, we do not agree with Ventura that the three subdivisions of section 4985.2 provide county auditors and tax collectors with *discretion* whether to cancel delinquency penalties. Certainly, for example, we do not read subdivision (c) as a grant of discretionary authority to county auditors and tax collectors to ignore a court order.

Nor do we find that subdivisions (a) and (b) of section 4985.2 give the auditor or tax collector discretion to deny cancellation of penalties if and when the taxpayer's proof has established the factual predicates set out in subdivisions (a) and (b). If the taxpayer presents such conclusive proof but the official refuses to make the corresponding subdivision (a) or (b) finding, or if the corresponding finding is made but the official then refuses to exercise the authority granted by section 4985.2 to cancel the penalties, that would be grounds for a Code of Civil Procedure section 1085 petition for traditional mandamus.

While it is true that the introductory paragraph of section 4985.2 states that penalties "may" be cancelled rather than "shall" be cancelled, we read such use of the word "may" as simply providing a previously nonexistent statutory authority to effect a cancellation. Section 4985.2 should not be read to include a discretion to deny cancellation where the predicate facts have been established.

The Legislative Counsel's Digest for the legislation that added section 2617.5 to the Revenue and Taxation Code (§ 2617.5 was § 4985.2's predecessor statute and was added to the Rev. & Tax. Code by Stats. 1976, ch. 431, § 1, p. 1103) stated: "Under existing law a 6-percent penalty is imposed on property taxes which are not paid prior to becoming delinquent; and there is no provision for the cancellation of a penalty. [¶] This bill would authorize the tax collector or the auditor to cancel a delinquent penalty on the property, with the approval of the board of supervisors on a finding that the delinquency was due to reasonable cause and circumstances beyond the assessee's control, and occurred not withstanding the exercise of ordinary care and in the absence of willful neglect, provided the payment is made within 90 days

Ventura is *People v. Martinson* (1986) 188 Cal.App.3d 894 [233 Cal.Rptr. 617], a civil suit in which two defendants were found to have violated the Corporate Securities Law of 1968 and were required to disgorge their sales commissions. In the instant case, it was the general partner of the various limited partnerships who was alleged to have violated securities laws, but it is Ventura whom Westoaks Investment #27 and Westoaks Investment #58 contend should disgorge the delinquency penalties. The contention lacks logic. A similar problem rests with the contention of Westoaks Investment #27 and Westoaks Investment #58 that the trial court's broad power to do equity will support the order canceling the delinquency penalties.

of the first delinquency date or within 30 days after the second delinquency date." Thus, the predecessor to section 4985.2 was enacted simply to authorize cancellation of penalties under specific circumstances, because prior to its enactment, there was no authority for such cancellation even under the very equitable circumstances addressed in subdivisions (a) and (b). Enactment of that predecessor statute solved a problem similar to that recognized by the San Diego County Counsel's Office—that sometimes penalties should be cancelled but the auditor or tax collector needs statutory authorization to effect such cancellation.[12]

### 2. *Further Trial Court Proceedings Under Section 4985.2, Subdivisions (a) and (b) Are Required*

■   Central to relief under subdivisions (a) and (b) of section 4985.2 are the required findings about the taxpayer and the timeliness of the payment of the delinquent taxes. Because the matter of such relief has already come before the trial court, and because section 4985.2 currently has no procedural

---

[12] Requirements in former section 2617.5 (and in early versions of its successor statute, § 4985.2), that (1) taxpayers file a claim with the board of supervisors to obtain a cancellation of tax delinquency penalties, and (2) such request for relief be filed within a specified number of days after the penalty was paid were deleted by amendments to section 4985.2. This left section 4985.2 without any explicit procedural directive as to how a taxpayer would seek the relief afforded by that statute.

Ventura contends that Westoaks Investment #27 and Westoaks Investment #58 were required to abide by the time parameters set out in section 5097 for filing a claim for a refund of taxes. (Under section 5107, the use of the word "taxes" in § 5097 includes refunds of taxes, penalties, interest and costs). We do not agree that Westoaks Investment #27 and Westoaks Investment #58 were required to comply with such time parameters.

Westoaks Investment #27 and Westoaks Investment #58 seek a cancellation of tax *delinquency penalties* under section 4985.2, whereas section 5097 (setting out a time for filing a claim for refund) and its companion statute 5096 (setting out the grounds for filing a claim for refund) do not address delinquency penalties. The fact that section 5096 begins with the words "[a]ny taxes paid before or after delinquency shall be refunded" does not alter this analysis. The grounds for refund of penalties stated in section 5096 are similar to those for cancellation of penalties stated in section 4986, which also do not include delinquency penalties. Again, it is section 4985.2 that addresses penalties paid because of tax delinquency.

*Samarkand of Santa Barbara, Inc. v. County of Santa Barbara* (1963) 216 Cal.App.2d 341, 359 [31 Cal.Rptr. 151], cited by Ventura, does not support its position. Under sections 4986 (cancellation) and 5096 (refunds), an *erroneous* charge, levy and collection of taxes, penalties and costs will merit cancellation and refund. In *Samarkand*, a statute stated that penalties on property to which a certain welfare exemption was available would be cancelled *as if they had been levied or charged erroneously*, and if they were paid, they would be refunded *as if they had been erroneously collected*. Here, Ventura has not cited any statute which states that penalties cancelled under section 4985.2 will be cancelled as if they were levied or charged erroneously.

directives for how a party seeking such relief is to proceed and it does not appear that Ventura has developed any procedures for its taxpayers, it would not be unwarranted for the motion papers which Westoaks Investment #27 filed with the court to have the delinquency penalties cancelled be deemed a written request to Ventura for section 4985.2 cancellation relief.[13] The request should be considered and decided by Ventura. Thereafter, if Westoaks Investment #27's request for cancellation is denied by Ventura, it can file a petition for a writ of mandate if it believes such a petition is warranted.

██ Westoaks Investment #58 is a different matter. It has already (in Aug. and Oct. 2003) filed a request with Ventura (specifically with Ventura's treasurer-tax collector) for cancellation of delinquency penalties under section 4985.2, and its requests were denied in September and November of that year. Can the instant case be considered a suit for traditional mandamus? Arguably it can. However, the trial court acted outside of its jurisdiction when it determined that it could decide the issues in this case under subdivision (c) of section 4985.2; that is, when it determined it has "independent authority to cancel any penalty, costs, or other charges resulting from tax delinquency for real property taxes pursuant to . . . § 4985.2 (c) and broad powers over administration and protection of the property subject to the receivership pursuant to Gov. Code § 13975.1." The only power that the trial court has with respect to the decision of Ventura to deny Westoaks Investment #58 section 4985.2 relief is to decide Westoaks Investment #58's motion as a petition for traditional mandamus by determining whether, *solely under the parameters for relief set out in subdivisions (a) and (b) of section 4985.2*, such relief should have been granted to Westoaks Investment #58. The answer to this question will require at least in part, a determination as to whether, and to what extent, the acts of the general partner are, or should be, deemed to be the acts of the limited partnership.[14] This will involve legal and factual issues, which should be addressed in the first instance by the trial court.

3.–8.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[13] We make no ruling as to how section 4985.2 should operate procedurally with respect to any other party claiming relief under it.

[14] We observe that a "balancing of equities" test is not an option under section 4985.2.

*See footnote, *ante*, page 1038.

## *DISPOSITION*

The order from which Ventura has appealed is reversed and the cause is remanded for further proceedings consistent with the views expressed herein. Ventura, Westoaks Investment #27 and Westoaks Investment #58 will all bear their own costs on appeal.

Klein, P. J., and Aldrich, J., concurred.