Filed 11/20/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MARLTON RECOVERY PARTNERS, LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF LOS ANGELES, et al., <br><br> Defendants and Respondents. | B257400 <br><br> (Los Angeles County <br> Super. Ct. No. BS141278) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joanne O'Donnell, Judge. Affirmed.

Freeman, Freeman & Smiley, Robert J. Girard, II, Jared A. Barry for Plaintiff and Appellant.

Mark J. Saladino, County Counsel, Sayuj Panicker, Deputy County Counsel, for Defendants and Respondents.

_____

Petitioner and appellant Marlton Recovery Partners, LLC (Marlton) appeals from a judgment denying its verified petition for peremptory writ of mandate. In the petition, Marlton sought to overturn a decision by respondent County of Los Angeles; Mark J. Saladino, the Treasurer-Tax Collector for the County of Los Angeles; and the Board of Supervisors for the County of Los Angeles (collectively the County) denying Marlton's request for cancellation of tax penalties totaling approximately $1.6 million under Revenue and Taxation Code section 4985.2, subdivision (a).[1]

We conclude that under section 4985.2, a tax payer may not be in delinquent status as to any tax period in excess of four years in order to seek relief for penalties accrued. Accordingly, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.      Marlton's June 5, 2012 Request for Cancellation of Tax Penalties**

In a letter dated June 5, 2012, Marlton through counsel sent to Respondent Saladino, then the County of Los Angeles Treasurer and Tax Collector, a "Request for Cancellation of Penalties" regarding delinquent taxes and penalties on 26 parcels (the Property).[2] The taxes on the Property were delinquent starting in the 2005-2006 tax year and the amount of delinquent taxes totaled $2,408,939.64 and amount of the penalties, redemption penalties and redemption fees (collectively Penalties) totaled $1,591,042.68. In its request, Marlton states that it acquired title to the Property in 2011 by foreclosure and had sold some of the parcels of the Property to Kaiser Foundation Health Plan, Inc. (Kaiser), but Marlton retained liability for the delinquent taxes and associated penalties on the sold parcels through the date of sale.

---

[1] All further statutory references are to the Revenue and Taxation Code unless otherwise indicated.

[2] Specifically, the letter listed the following Assessor's Parcel Numbers (APN): 5032-003-010, 5032-003-014, 5032-003-015, 5032-003-018, 5032-004-003, 5032-004-004, 5032-004-005, 5032-004-006, 5032-004-007, 5032-004-019, 5032-006-002, 5032-006-003, 5032-006-004, 5032-006-005, 5032-006-006, 5032-006-007, 5032-006-008, 5032-006-009, 5032-006-010, 5032-006-011, 5032-006-012, 5032-006-013, 5032-006-014, 5032-006-015, 5032-006-016, and 5032-006-017.

After pointing out that Respondents could not recover the delinquent taxes and penalties through a tax sale as the United States Bankruptcy Court had declined to remove an automatic stay to allow such a sale, Marlton stated it "is prepared, subject to the request made below, to promptly pay the Delinquent Taxes . . . ."[3] Marlton then requested that the Penalties incurred during the 2008-2009, 2009-2010, 2010-2011, and 2011-2012 tax years be cancelled pursuant to section 4985.2, subdivision (a). Section 4985.2 states: "Any penalty, costs, or other charges resulting from tax delinquency may be canceled by the auditor or the tax collector upon a finding of any of the following: [¶] (a) Failure to make a timely payment is due to reasonable cause and circumstances beyond the taxpayer's control,[4] and occurred notwithstanding the exercise of ordinary care in the absence of willful neglect, provided the principal payment for the proper amount of the tax due is made no later than June 30 of the fourth fiscal year following the fiscal year in which the tax became delinquent." (§ 4985.2, subd. (a).) Marlton argued that under the statute cancellation of the penalties was "mandatory, notwithstanding use of the permissive 'may' where the statutory criteria are satisfied" and cited to *Strumpfer v. Westoaks Investment #27* (2006) 139 Cal.App.4th 1038, 1050. According to the letter, in *Strumpfer* the Commissioner of Corporations brought an action to cancel tax delinquency penalties based on allegations of investor fraud in real estate investment partnerships and the Los Angeles County Tax Collector settled the matter and canceled the penalties, although the case proceeded against the Ventura County Assessor.

---

[3] Marlton also stated it would pay "such additional real estate taxes, special assessment district charges, and sums referable to bonded indebtedness," which accrued on the property sold to Kaiser through the date of sale and which continued to accrue on the property not sold to Kaiser, "notwithstanding that the property was grossly over-assessed as the result of the Los Angeles County Assessor's erroneous assessments and the failure of Marlton's predecessors-in-interest to fulfill their fiduciary management obligations . . . ."

[4] Marlton's letter misquotes section 4985.2 as using the phrase "beyond the taxpayer's *reasonable* control."

3

Marlton argued that good cause existed requiring cancellation of the Penalties because Marlton was composed largely of lenders who were defrauded when they invested in the development of real estate in Los Angeles and their victimization was part of a larger, billion-dollar scheme of fraud by the lender's agent, USA Commercial Mortgage Company (USA Capital) and its president and chief operating officer, Joe Milanowski.[5]

## II.      Saladino's July 16, 2012 Denial

In a letter dated July 16, 2012, Respondent Saladino noted that Marlton's June 5, 2012 letter seeking a penalty cancellation, was a follow-up to an April 3, 2012 meeting with the Assistant Treasurer and Tax Collector, Donna Doss, in which Doss had stated that there were no legal grounds to warrant a penalty cancellation based on the information presented by Marlton.  The letter notes that Marlton sought cancellation of penalties from the 2008-2009 tax year forward and that Marlton could "only request penalty cancellation for this period because of the time limitation of section 4985.2 (a), which provides that penalty may be canceled only if the principal payment for the proper amount of the tax is made no later than June 30 of the fourth fiscal year following the fiscal year in which the tax became delinquent."

Saladino then states, "As the statute indicates, the principal amount of the taxes must be paid first in order for a cancellation request to be granted.  Our records indicate that the principal amount of taxes has not been paid on the Property since the 2005/2006 tax year except for some parcels regarding the 2011/2012 tax year.  Consequently, penalties cannot be cancelled for the tax years where the principal amount has not been paid."  Saladino then pointed out that interest was still accruing under section 4103 and that his staff could provide an exact accounting of the taxes due.

Saladino's letter then goes on to note that Marlton became the owner of the Property in February 2011 and "would only be able to seek a penalty cancellation for the

_____

[5] The letter also explained that USA Capital declared bankruptcy in 2006 and Milanowski pled guilty to wire fraud and was the subject of a Securities and Exchange Commission securities fraud judgment.

4

years that it was the taxpayer." Nonetheless, Saladino's analysis of Marlton's letter concluded that Marlton did not meet the statutory criteria for cancellation of penalties in any of the years, noting that there was no evidence of the reasons Marlton could not have paid taxes, including dates of the alleged misappropriation and the relationship of USA Capital's bankruptcy and the bankruptcies of successive loan servicers to the failure to timely pay. Saladino also noted that Marlton's statement it prepared to promptly pay the delinquent taxes suggests that it had the ability to pay but was making a business decision not to pay. In terms of the *Strumpfer* case, Saladino noted that Ventura County was successful when the case was tried and was not ordered to cancel the penalties.

## III. Marlton's July 31, 2012 Payment of Some Delinquent Taxes

By checks dated July 31, 2012, Marlton paid the delinquent taxes on the parcels sold to Kaiser, but not on the parcels that were not sold to Kaiser.[6]

## IV. Marlton's Petition for a Writ of Mandamus

On June 16, 2013, Appellant filed a Verified Petition for Peremptory Writ of Mandate under Code of Civil Procedure section 1085 challenging Respondent's denial of its request for cancellation of the tax penalties. In addition to the tax years discussed in its letter request, Marlton's petition also sought the cancellation of all tax penalties on the Properties "levied for years 2005 through 2012."[7]

After answering, Respondents filed a motion for summary judgment in January 2014 on the ground that Marlton "cannot establish an essential element in its claim insofar as [Marlton] cannot prove it paid the principal amount of taxes with . . . the time period required by section 4985.2." Specifically, Respondents argued that because the taxes on the Properties became delinquent starting in tax year 2005-2006, the June 30th of the fourth fiscal year following the delinquent tax year was June 30, 2010, but Marlton

---

[6] The delinquent taxes on the unsold properties remained unpaid as of June 2013.

[7] In addition, The Petition lists 27 parcels, adding APN 5032-005-001 to the original list of 26 APN's.

did not make delinquent tax payments on the parcels sold to Kaiser until July 2012 and had not made any delinquent tax payments on the unsold parcels as of June 2013.

Marlton filed an opposition, arguing that Respondents had failed to demonstrate that Marlton's failure to pay the property taxes was not excused under section 4985.2, subdivision (a), Respondents' argument improperly lumped different tax years together and the "statute of limitations" under section 4985.2, subdivision (a) was tolled for tax years 2005-2006, 2006-2007, and 2007-2008.[8]

At the April 16, 2014 hearing on Respondents' motion for summary judgment, the trial court's tentative ruling stated that "[p]ayment of delinquent taxes before an application is a condition required before a taxing authority may consider the cancellation of delinquency penalties," citing section 4985.2, subdivision (a).[9]  Thus, the trial court concluded, "[a]s this condition was not met, respondents' failure to grant cancellation could not have been arbitrary or capricious or undertaken in dereliction of a ministerial duty as a matter of law" and granted summary judgment to Respondents.

At the hearing, Marlton argued that the argument relied upon by the trial court was not noticed in the motion for summary judgment and that section 4985.2 did not require the taxes to be paid prior to an application for cancellation of penalties "if they are paid prior to the time or within the four-year statute that is in that section."  After rebuttal, the trial court adopted its tentative ruling and granted summary judgment to the Respondents.

---

[8] Marlton also sought a continuance for discovery related to a "Refund Petition" it had filed asking the court to order a partial refund based on the allegation that the Properties were over-valued in their tax assessments, which the trial court denied.  As to Respondents' Refund Petition, the trial court sustained a demurrer and dismissed it in September 2014 and Marlton dismissed its appeal in the Refund Petition in June 2015. (*Marlton Recovery Partners, LLC. v. County of Los Angeles* (No. B259719, June 15, 2015.)

[9] On June 8, 2015, we granted Respondents' Motion to Augment the Record with the trial court's written tentative ruling.  Previously, on April 13, 2015, we granted Marlton's Motion for Judicial Notice that also included the trial court's tentative ruling.

6

The trial court entered judgment on April 29, 2014, and Marlton filed a timely notice of appeal on June 20, 2014.[10]

## DISCUSSION

Marlton contends that the trial court's grant of summary judgment to Respondents was in error because it was based on a ground not raised by Respondents and the trial court's interpretation of section 4985.2, subdivision (a) was erroneous as a matter of law.[11] We disagree and affirm.

### I. Standard of Review

Under Code of Civil Procedure section 1085, subdivision (a), the trial court may issue a writ of mandate "to any . . . person . . . to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by such . . . board, or person." "A traditional writ of mandate under Code of Civil Procedure section 1085 is a method for compelling a public entity to perform a legal and usually ministerial duty. [Citation.] The trial court reviews an administrative action pursuant to Code of Civil Procedure section 1085 to determine whether the agency's action was arbitrary, capricious, or entirely lacking in evidentiary support, contrary to established public policy, unlawful, procedurally unfair, or whether the agency failed to follow the procedure and give the notices the law requires. [Citations.] 'Although mandate will not lie to control a public agency's discretion, that is to say, force the exercise of discretion in a particular manner, it will lie to correct abuses of discretion. [Citation.] In determining whether an agency

---

[10] After the notice of appeal was filed in this case, Marlton made a second request for cancellation of penalties dated June 23, 2014, and Saladino denied the request in a letter dated July 16, 2014. We do not address this second request or its denial in this appeal.

[11] As the trial court's tentative ruling is now part of the record, we do not address Marlton's contention that we cannot conduct a meaningful review of the trial court's ruling.

has abused its discretion, the court may not substitute its judgment for that of the agency, and if reasonable minds may disagree as to the wisdom of the agency's action, its determination must be upheld. [Citation.]'" (*Klajic v. Castaic Lake Water Agency* (2001) 90 Cal.App.4th 987, 995, fn. omitted.)

"'In reviewing a trial court's judgment on a petition for writ of ordinary mandate, we apply the substantial evidence test to the trial court's factual findings.' [Citation.] Thus, foundational matters of fact are conclusive on appeal if supported by substantial evidence." (*Klajic v. Castaic Lake Water Agency*, *supra*, 90 Cal.App.4th at pp. 995– 996.) We independently review findings on legal issues and the interpretation of a statute is a legal issue subject to de novo review. (*Farahani v. San Diego Community College Dist.* (2009) 175 Cal.App.4th 1486, 1491.)

## II. Trial Court Properly Considered Lack of Payment

Marlton argues that the trial court abused its discretion by granting the motion for summary judgment on a ground not raised by Respondents' motion for summary judgment, namely that it had not paid the delinquent taxes when it requested cancellation of tax penalties. As Marlton quotes, "If the court identifies a ground of law which is dispositive of the action when applied to an undisputed material fact included in the parties' separate statements of undisputed material facts, the court may exercise its discretion to grant the motion for summary judgment on said ground even though it was not explicitly tendered by the moving party. However, when the court does so, due process of law requires that the party opposing the motion must be provided an opportunity to respond to the ground of law identified by the court and must be given a chance to show there is a triable issue of fact material to said ground of law." (*Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, 71.) While Marlton is correct that a trial court generally must provide an opportunity to respond before it can consider an issue not raised in the summary judgment motion, "[c]onsideration of the issue is appropriate, however, if the record establishes that the opposing party 'could not have shown a triable issue of material fact had the ground of law been asserted by the moving party.' ([*Juge*, *supra*, 12 Cal.App.4th at p. 71]; see *Folberg v. Clara G. R. Kinney Co.*

8

(1980) 104 Cal.App.3d 136, 140; *California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 26.)" (*Ross v. Roberts* (2013) 222 Cal.App.4th 677, 683.)

Here, the record shows that Marlton paid the delinquent taxes on the Kaiser parcels after its June 5, 2012 letter requesting cancellation of the penalties. Moreover, Marlton concedes on appeal that it "did not and does not dispute that it paid the delinquent taxes *after* making its request for cancellation directly to Respondent . . . ." Thus, the record establishes that Marlton "could not have shown a triable fact issue" had the point relied upon by the trial court been raised by the moving party. Rejecting this procedural argument, we turn to the merits.[12]

### III.    Trial Court Correctly Concluded Section 4985.2 Requires Timely Payment

Section 4985.2 states that the tax collector can cancel penalties for tax delinquencies if "[f]ailure to make a timely payment is due to reasonable cause and circumstances beyond the taxpayer's control, and occurred notwithstanding the exercise of ordinary care in the absence of willful neglect, *provided the principal payment for the proper amount of the tax due is made no later than June 30 of the fourth fiscal year following the fiscal year in which the tax became delinquent*." (§ 4985.2, subd. (a), italics added.) Thus, under the plain language of section 4985.2, subdivision (a), the tax collector cannot cancel tax penalties unless the delinquent tax payments were made by the end of the fourth tax year following the delinquency tax year.

Marlton suggests that "[n]othing in the plain language of Section 4985.2(a) requires [Marlton] to ask for cancellation of the Penalties only after the principal amount of taxes are paid." While it may be true that the statute does not limit when Marlton may ask for a cancellation, the statute does not authorize the tax collector to cancel penalties

---

[12] We note that parties incorrectly refer to section 4985.2, subdivision (a)'s timeliness requirement – that "the principal payment for the proper amount of the tax due is made no later than June 30 of the fourth fiscal year following the fiscal year in which the tax became delinquent" – as a statute of limitations. It is not a statute of limitations as it does not prescribe when a plaintiff must bring a cause of action in court and, consequently, doctrines related to statutes of limitation are not necessarily applicable to the timeliness issue in this case.

unless timely payment—as defined by the statute—is made of the delinquent taxes. Prior to section 4985.2 and its predecessor, the tax collector was without any authority to cancel tax penalties under any circumstance. "The Legislative Counsel's Digest for the legislation that added section 2617.5 to the Revenue and Taxation Code (§ 2617.5 was § 4985.2's predecessor statute and was added to the Rev. & Tax. Code by Stats. 1976, ch. 431, § 1, p. 1103) stated: 'Under existing law a 6-percent penalty is imposed on property taxes which are not paid prior to becoming delinquent; and there is no provision for the cancellation of a penalty. [¶] This bill would authorize the tax collector or the auditor to cancel a delinquent penalty on the property, with the approval of the board of supervisors on a finding that the delinquency was due to reasonable cause and circumstances beyond the assessee's control, and occurred notwithstanding the exercise of ordinary care and in the absence of willful neglect, provided the payment is made within 90 days of the first delinquency date or within 30 days after the second delinquency date.' Thus, the predecessor to section 4985.2 was enacted simply to authorize cancellation of penalties under specific circumstances, because prior to its enactment, there was no authority for such cancellation even under the very equitable circumstances addressed in subdivisions (a) and (b)."[13] (*People ex rel. Strumpfer v. Westoaks Investment #27*, *supra*, 139 Cal.App.4th at pp. 1050-1051.) Thus, "[c]entral to relief under subdivisions (a) and (b) of section 4985.2 are the required findings about the taxpayer and the *timeliness of the payment of delinquent taxes*." (*Id.* at p. 1051, italics added.)

Based on our findings above, we do not address Marlton's remaining arguments. We find no error in the trial court's grant of summary judgment and affirm.

---

[13] Subdivision (b) applies to "an inadvertent error in the amount of payment made by the taxpayer, provided the principal payment for the proper amount of the tax due is made within 10 days after the notice of shortage is mailed by the tax collector."

## DISPOSITION

We affirm.  Respondents shall recover their costs on appeal.

TO BE PUBLISHED.


CHANEY, Acting P. J.


We concur:


JOHNSON, J.


LUI, J.