Filed 8/8/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CODY WEISS, | B259868 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BS141354) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Affirmed.

Michael N. Feuer, City Attorney, Thomas S. Peters, Chief Deputy City Attorney, Ronald S. Whitaker, Assistant City Attorney and Gerald Masahiro Sato, Deputy City Attorney, for Defendant and Appellant, City of Los Angeles.

Manatt, Phelps & Philips and Michael M. Berger for Defendant and Appellant Xerox Business Services, LLC.

Ahdoot & Wolfson and Theodore Walter Maya; Zimmerman Reed, Caleb Lucas-Hansen Marker and Bradley Christopher Buhrow for Plaintiff and Respondent.

When a person challenges a parking citation, the Vehicle Code provides three potential levels of review: initial review, administrative hearing, and de novo appeal to the superior court. (Veh. Code, §§ 40215, subds. (a)-(c), 40230, subds. (a), (d).)[1] As to the initial review, section 40215, subdivision (a) provides, in substance, that the request for initial review is made to "the issuing agency," that the "issuing agency shall cancel" the citation if certain specified circumstances are satisfied, and that "[t]he issuing agency shall advise the processing agency, if any, of the cancellation."

In this appeal by the City of Los Angeles (City) and Xerox Business Services, Inc. (Xerox) from the trial court's grant of petitioner Cody Weiss' petition for a writ of mandate, we consider whether the City, as the "issuing agency" for notice of parking violations in the City (see § 40202), must conduct the "initial review" of challenged citations (§ 40215, subd. (a)), or whether it may delegate that duty to Xerox, its "processing agency" (§ 40200.6, subd. (a)) with which it contracts "for the processing of notices of parking violations" (§ 40200.5, subd. (a)).[2] Based on the language of section 40215, subdivision (a) and relevant legislative history, we hold, as did the trial court, that the City is required to conduct the initial review, and cannot contract with Xerox to perform that duty. Therefore, we affirm the trial court's issuance of a writ of mandate. We also affirm the trial court's award of approximately $722,000 in attorney fees to Weiss

---

[1]     All undesignated section references are to the Vehicle Code.

[2]     Among other things, "'citation' means . . . notice of parking violation." (§ 41601.) We use the terms interchangeably.

2

pursuant to the California private attorney general statute, Code of Civil Procedure section 1021.5.

# BACKGROUND[3]

I.  *Weiss' Citation and Petition*

In March 2012, Weiss received a parking citation for a violation of Los Angeles Municipal Code section 80.69(c), for exceeding a two-hour posted time limit on La Jolla Avenue in Los Angeles.  Weiss timely contested the citation by filing an online statement claiming his vehicle "was not parked . . . in excess of two hours."  He provided no evidence to support his statement; he simply "decline[d] responsibility" for the parking violation, and "request[ed] that this citation be dismissed immediately."  In April 2012, after an initial review performed by Xerox, Weiss received a letter advising him that an initial review had been performed and the citation would not be cancelled.  Although Weiss could have sought administrative review of this denial, he did not.  Instead, he paid the $55 citation.

In January 2013, Weiss filed the instant petition seeking a writ of mandate directing the City and Xerox to provide a legally sufficient initial review, in

---

[3]  The record does not contain the evidence presented at trial.  We therefore rely on the trial court's summary of the evidence in its statement of decision.  At this Court's request, the parties have lodged a copy of a Request for Judicial Notice containing excerpts of legislative history presented to the trial court.  We (as did the trial court) take judicial notice of that document.

compliance with section 40215, subdivision (a), once an alleged violator exercises his or her right to challenge a parking citation under that statute.[4]

## II.    *First Trial Phase*

The trial court bifurcated the trial on the issues raised by Weiss' petition. In the first phase of the trial, the trial court deferred the question whether Xerox, a processing agency, was authorized by section 40215 to perform initial reviews. Rather, the court first considered only Weiss' claim that the initial review process, as currently constituted, did not comply with the statutory obligations of the initial review under the Vehicle Code, in that (among other assertions) it was too rigid and did not provide sufficient discretion to dismiss citations. As most of the evidence presented in this phase of the trial is largely immaterial to the issues on appeal, we summarize only certain portions.

Since 1985, the City has contracted with Xerox to act as its processing agency. As part of Xerox's processing duties, the City delegates the duty under section 40215, subdivision (a) to conduct the initial review of contested citations. Xerox is paid based on the number of parking citations processed per month, but does not receive additional compensation to conduct initial reviews.

Xerox performs the initial reviews through its Parking Violations Bureau (Bureau), which is staffed by a subcontractor. About five percent of parking

---

**4**    In addition to seeking a traditional writ of mandate, Weiss' case initially was filed as a putative class action, and alleged violations of Business and Professions Code section 17200 et seq. (Unfair Competition), 42 United States Code section 1983 (section 1983), and the California Public Records Act, Government Code sections 6250 et seq. (PRA). The trial court stayed these claims pending its determination as to the petition for writ of mandate.

citations issued by the City result in a request for an initial review. In fiscal year 2013, Xerox conducted 135,291 initial reviews.

The initial review is conducted by Bureau clerks, who must adhere to 46 Business Processing Rules (BPR), drafted by the City (or by Xerox and approved by the City). Each BPR contains scenarios regarding common complaints and specific types of citations (e.g., citations involving parking meters, disabled person placards and license plates, and residential parking permits). Clerks receive training on the BPRs when hired, when BPRs are changed, and at weekly meetings. The City also issues memoranda to provide guidance.

When considering a contested citation, the Bureau clerk refers to the applicable BPR, if any; if that BPR permits dismissal of a citation, the clerk dismisses it. If no BPR addresses the particular challenge, but a motorist has presented sufficient evidence to overcome a citation, clerks are instructed to refer the matter to a supervisor for a decision. The motorist learns the result of the initial review through one of 97 form letters drafted and approved by the City, on City letterhead, sent to the motorist by Xerox.

Considering this (and other) evidence, the court concluded that, setting aside the issue whether Xerox was authorized to conduct the initial review, the City's system of initial review complied with the Vehicle Code requirements in the scope of the review, in the fairness of its procedure to the motorist, and in the fairness of its substantive decision-making process.

III. *Second Trial Phase*

In the second phase of the trial, the trial court considered the question at issue in this appeal: whether section 40215, subdivision (a) requires that the City, as the issuing agency, conduct the initial review, rather than its processing agency,

5

Xerox. At the court's request, the parties briefed the issue extensively. In its ruling, the court reviewed the statutory framework, its legislative history (including pertinent existing, amended and repealed Vehicle Code sections), and case law. Conceding that the question was close, the court concluded that changes to the statutory scheme in 1995 reflected the Legislature's intent to place a nondelegable duty to perform the initial review under section 40215, subdivision (a) on the City, the public agency that issues parking citations.

In September 2014, after Weiss dismissed his remaining claims, the court entered judgment in Weiss' favor.[5] The court issued a peremptory writ of mandate, ordering the City, as the issuing agency, to conduct the initial review of contested parking citations, pursuant to section 40215, subdivision (a), and "not to contract, subcontract, or otherwise delegate [its] duty to make such initial review decisions to any other entity or 'processing agency' . . . ." Xerox was permanently enjoined from making initial review decisions as described in section 40215, subdivision (a).

IV.   *Attorney Fees*

After extensive post-trial briefing, Weiss was awarded $721,994.81 in attorney fees pursuant to the private attorney general fee statute, Code of Civil Procedure section 1021.5. The City and Xerox timely appealed from the judgment and order awarding attorney fees. We consolidated the appeals.

---

[5]   Weiss dismissed the class allegations, and Unfair Competition and section 1983 claims following trial on the writ petition. At trial, the court found Weiss' claim for violation of the PRA moot.

6

## DISCUSSION[6]

I. *The Writ of Mandate*

A. *Standing*

Before considering the principal issue in this case—whether section 40215, subdivision (a) requires the City, as the issuing agency, to perform the initial review of contested parking citations—we must first consider Xerox's contention that Weiss lacks standing to seek a writ of mandate.[7]

A traditional writ of mandate under Code of Civil Procedure section 1085 is a way to compel a public entity to perform a legal, typically ministerial, duty. Under this statute, the trial court reviews an administrative action to determine if an agency's action "was arbitrary, capricious, or entirely lacking in evidentiary support, contrary to established public policy, unlawful [or] procedurally unfair . . . . [Citations.] 'Although mandate will not lie to control a public agency's discretion, that is to say, force the exercise of discretion in a particular manner, it will lie to correct abuses of discretion. [Citation.]'" (*Klajic v. Castaic Lake Water Agency* (2001) 90 Cal.App.4th 987, 995, fn. omitted.)

"As a general rule, a party must be 'beneficially interested' to seek a writ of mandate. [Citation.] 'The requirement that a petitioner be "beneficially

---

[6]    Our discussion and resolution of all issues on appeal has been greatly assisted by the trial court's thoughtful analysis.

[7]    Xerox raises another preliminary issue, asserting that "nowhere in the complaint did Weiss press the narrow charge on which he prevailed, i.e., that the City — and the City alone — had to perform the initial review. It is simply not in the complaint." Xerox is mistaken. The petition specifically alleges that, under section 40215, subdivision (a), once "an alleged violator . . . submits a request for an initial review, . . . *the statute imposes a mandatory duty upon the issuing agency (the City) to engage in an initial review*." (Italics added.)

7

interested" has been generally interpreted to mean that one may obtain the writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large. . . . [Citations.]'" (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165 (*Save the Plastic Bag*).) "The beneficial interest must be direct and substantial. [Citations.]" (*Ibid.*)

In the instant case, Weiss unsuccessfully challenged his own parking citation at the initial review, then elected to pay the fine rather than pursue further appeal. Given his choice to pay the fine rather than pursue further review, he lacks a beneficial interest in the outcome of this mandamus proceeding (he has paid the fine and his citation cannot be overturned), and thus he lacks general standing to pursue mandamus relief. (*Save the Plastic Bag, supra*, 52 Cal.4th at p. 165; see *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 361–362 (*Associated Builders*).)

In the trial court, relying on these principles, Xerox demurred to Weiss' petition on the ground that he lacked standing. The trial court overruled the demurrer, concluding that Weiss has standing under the "public interest" exception to pursue mandamus seeking prospective injunctive and declaratory relief. On appeal, Xerox challenges the court's ruling. We conclude that the trial court's ruling is squarely within the doctrine of public interest standing.

"The exercise of jurisdiction in mandamus rests to a considerable extent in the wise discretion of the court." (*McDonald v. Stockton Met. Transit Dis*t. (1973) 36 Cal.App.3d 436, 440, citing *Bd. of Soc. Welfare v. County of L.A.* (1945) 27 Cal.2d 98, 100–101 (*Bd. of Soc. Welfare*).) Under the doctrine of public interest standing, "'"where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the [petitioner] need not

8

show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced.'" [Citation.]" (*Save the Plastic Bag, supra,* 52 Cal. 4th at p. 166.) Indeed, California "courts have repeatedly applied the 'public right/public duty' exception to the general rule that ordinarily a writ of mandate will issue only to persons who are 'beneficially interested.' [Citation.]" (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1116-1117.) In determining whether a petitioner has public interest standing, the court also considers the burden on those who have a beneficial interest, and would have general standing, but who may be disinclined or ill-equipped to seek review. (See *Driving Sch. Assn. of Cal. v. San Mateo Union High Sch. Dist.* (1992) 11 Cal.App.4th 1513, 1518–1519 (*Driving School*).)

In the instant case, given that the standing issue was raised by demurrer, we (as did the trial court) accept as true all facts properly pleaded in the petition. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) Weiss alleged that the City issued 8,000 parking citations per day, or 5.7 million over a 24-month period in 2009–2010, generating revenue of $335 million, or nearly three percent of the City's budget, but failed to comply with its statutory duties in performing the initial review required by section 40215.[8] Based on these allegations, the trial court concluded there was "no question that ensuring that the City follows the proper procedure for [processing and collecting] parking tickets is a matter of public right." Further, the court also agreed with Weiss' allegations that only a

---

[8]    The evidence produced at the time of trial showed that the City issued about 2.5 million parking citations per year, generating nearly $158 million in revenue.

9

short window of time is available within which to mount such a challenge,[9] and that typically only a minimal fine is at issue on any individual citation. Thus, given the burden of mounting a challenge to the initial review procedure, it was unlikely an individual motorist would do so. Accordingly, the court determined that Weiss had public interest standing to seek prospective relief, because unless such standing is available, the important public interest raised by his petition would be effectively insulated from judicial review.[10] (See *Driving School, supra,* 11 Cal.App.4th at p. 1519 [public interest standing granted for writ seeking order that school district desist charging tuition for drivers' education because individual students were unlikely to have the financial resources or interest to challenge the district's statutory authority].)

The trial court's reasoning is unassailable, and certainly not an abuse of discretion. It falls well within the proper bounds of public interest standing, and serves the purpose of that doctrine: to promote "'the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right.' [Citation]." (*Save the Plastic Bag, supra*, 52 Cal.4th at p. 166.)

---

**9** With respect to the time within which a citation may be challenged, section 40215, subdivision (a) provides: "For a period of 21 calendar days from the issuance of a notice of parking violation or 14 calendar days from the mailing of a notice of delinquent parking violation, exclusive of any days from the day the processing agency receives a request for a copy or facsimile of the original notice of parking violation pursuant to Section 40206.5 and the day the processing agency complies with the request, a person may request an initial review of the notice by the issuing agency."

**10** The court also found, however, that the public interest in according Weiss standing to seek retroactive relief was not significant and was outweighed by competing considerations. That conclusion is not at issue.

10

B. *Whether the City Must Conduct the Initial Review of Contested Parking Citations*

Having determined that Weiss has standing to seek prospective relief by writ of mandate, we turn to whether the trial court properly issued the writ. Because resolution of that question rests on statutory interpretation (i.e., whether § 40215, subd. (a) requires the City, as the issuing agency, to conduct the initial review of contested parking citations), we review the trial court's ruling de novo. (*Marlton Recovery Partners, LLC v. County of Los Angeles* (2015) 242 Cal.App.4th 510, 517.)

1. *Issuing, Processing and Reviewing Parking Violations*

For relevant background, we begin with a brief review of certain portions of the statutory framework governing the issuance, processing, and review of parking citations.

Effective July 1, 1993, the Legislature revised the Vehicle Code statutory scheme governing parking citations to remove them from criminal court jurisdiction, and, in its place, provide administrative procedures for review of contested citations followed by superior court review. (*Love v. City of Monterey* (1995) 37 Cal.App.4th 562, 566.) The Legislature found that the enforcement of parking violations in criminal courts imposed an unnecessary burden on motorists and the public and that, "[w]ith the enactment of appropriate fiscal and procedural safeguards, cities, counties . . . and other public entities can collect most . . . parking penalties, and fairly resolve most contested parking violations without court involvement.' (Stats. 1992, ch. 1244, § 1.)" (*Id.* at pp. 566–567.)

11

Section 40202 governs the issuance of parking citations. As all parties in the present case recognize, only a peace officer or employee of the municipality may issue a notice of parking violation under section 40202. (Cf., 85 Ops.Cal.Atty.Gen. 83, 84 (2002) [general law city may not contract with a private vendor to issue parking violations].) Also, the municipality (here, the City) is the "issuing agency" within the meaning of the Vehicle Code.

Under section 40200.3, subdivision (a), an issuing agency may act as its own agent for purposes of "processing" parking citations (see *Lockheed Information Management Services Co. v. City of Inglewood* (1998) 17 Cal.4th 170, 185 (*Lockheed*)), or it may contract with another government agency or private vendor, for "processing . . . prior to filing pursuant to Section 40230." (§ 40200.5.)[11]

Although the Vehicle Code does not define the term "processing" (*Lockheed, supra*, 17 Cal.4th at p. 185), it does define the term "processing agency": it is "the contracting party responsible for the processing of the notices of parking violations and notices of delinquent parking violations." (§ 40200.6, subd. (a).) An issuing agency that contracts with a processing agency must "establish written policies and procedures pursuant to which the contracting party shall provide services." (§ 40200.6, subd. (b).) Under the statutory scheme, the issuing agency "shall be responsible for all actions taken by the contracting parties and shall exercise effective oversight over the parties," which "includes, at a minimum," conducting an annual review of the processing agency's services and

---

[11]    As we explain below, section 40230 governs the appeal of a contested citation to the superior court, which is the third level of review provided by the section 40215, subdivision (c).

12

of complaints lodged against the agency, and establishing procedures to investigate and resolve such complaints. (§ 40200.6, subd. (c).)

When a person contests a parking citation, the statutory scheme provides three potential levels of review: initial review, administrative hearing, and de novo appeal to the superior court. (§§ 40215, subds. (a)-(c), 40230, subds. (a), (d).) With respect to the initial review, section 40215, subdivision (a) provides in relevant part that "a person may request an initial review of the notice by the issuing agency. The request may be made by telephone, in writing, or in person. There shall be no charge for this review. If, following the initial review, the issuing agency is satisfied that the violation did not occur, that the registered owner was not responsible for the violation, or that extenuating circumstances make dismissal of the citation appropriate in the interest of justice, the issuing agency shall cancel the notice of parking violation . . . . The issuing agency shall advise the processing agency, if any, of the cancellation. The issuing agency or the processing agency shall mail the results of the initial review to the person contesting the notice, and, if following that review, cancellation of the notice does not occur, include a reason for that denial [and] notification of the ability to request an administrative hearing." (§ 40215, subd. (a).)

A person who remains dissatisfied following the initial review may seek a second level administrative review (after depositing the amount of the parking penalty with the processing agency or demonstrating a financial inability to do so). (§ 40215, subd. (b).) That administrative hearing may be conducted in person or by mail, and must "provide an independent, objective, fair, and impartial review of contested parking violations" (§ 40215, subd. (c)(3)), conducted by a qualified examiner whom the issuing agency appoints or with whom it contracts, and who must satisfy certain criteria. (See § 40215, subd. (c)(4)(A)-(B).) Also, the hearing

13

must be conducted in accordance with written procedures established and approved by the issuing agency.  (§ 40215, subd. (c)(3).)  The issuing agency need not produce any evidence at the administrative hearing other than the citation and DMV information identifying the vehicle's registered owner.  A properly-prepared citation is prima facie evidence that the violation in question occurred.  (§ 40215, subd. (c)(5).)  Following an administrative hearing, the examiner's written decision must be delivered to the person contesting the citation and, if the citation has not been cancelled, must state a reason for the denial.  (§ 40215, subd. (c)(6).)

A person who remains dissatisfied following an administrative hearing may invoke the third and final level review:  a de novo appeal to the superior court.  (§ 40230, subd. (a).)  As before, a copy of a properly prepared notice of parking violation citation constitutes prima facie evidence of the facts constituting the violation.  (*Ibid.*)

2. *Interpretation of Section 40215, Subdivision (a)*

a. *Plain Meaning*

"Our task in construing a statute is to ascertain and give effect to the Legislature's intent.  [Citation.]  We begin by examining the words of the statute, giving them their usual and ordinary meaning and construing them in the context of the statute as a whole.  [Citations.]" (*Leonte v. ACS State & Local Solutions, Inc.* (2004) 123 Cal.App.4th 521, 526–527 (*Leonte*).)  "'If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls.'  [Citation.]  'We consider extrinsic aids, such as legislative history, only if the statutory language is reasonably subject to multiple interpretations.'  [Citation.]" (*City of Alhambra v. City of Los Angeles* (2012) 55 Cal.4th 707, 719.)

14

As we have observed, in pertinent part, section 40215, subdivision (a) provides that a person who wishes to contest a parking violation "*may request an initial review of the notice by the issuing agency. . . .* If, following the initial review, *the issuing agency* is satisfied that the violation did not occur, that the registered owner was not responsible for the violation, or that extenuating circumstances make dismissal of the citation appropriate in the interest of justice, *the issuing agency* shall cancel the notice of parking violation . . . . *The issuing agency shall advise the processing agency, if any, of the cancellation.*" (§ 40215, subd. (a), italics added.)

On its face, this language seems clear and unequivocal: the request for initial review is made to the issuing agency, and if the issuing agency is satisfied that dismissal is appropriate, it must advise the processing agency of the cancellation. Thus, the statute appears to contemplate that the issuing agency, not the processing agency, must conduct the initial review. However, as the trial court recognized, we cannot examine the statute in isolation; in determining the meaning of its language and whether it contains an ambiguity, we must consider it in light of the statutory scheme as a whole. (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743.)

b.      *Ambiguity*

Viewing section 40215, subdivision (a) in light of section 40200.5, subdivision (a), an inconsistency appears. As here relevant, section 40200.5, subdivision (a) provides that "an issuing agency may elect to contract" with a private vendor such as Xerox "for the processing of notices of parking violations *. . . prior to filing with the court pursuant to Section 40230."* (Italics added.) A "filing with the court pursuant to Section 40230" refers to the filing of a de novo

15

appeal to the superior court after an adverse ruling at the administrative hearing level of review provided by section 40215, subdivision (b). (§ 40230, subd. (a).) Thus, because an appeal to the superior court is the third level of review of a contested parking citation, and because section 40200.5, subdivision (a) allows the issuing agency to contract with the processing agency "for the processing of notices of parking violations" up to that appeal stage, it can be argued that the "processing" function performed by processing agency may include the initial review of a contested citation. (See *Lockheed, supra,* 17 Cal.4th at p. 186 [finding the term "processing" in § 40200.5, subd. (a) ambiguous].) In other words, under this reading of section 40200.5, a private vendor could assume all processing duties, including initial review, so long as the issuing agency retained full responsibility for the vendor's actions, adopted written policies and procedures, and conducted "effective oversight." (See § 40200.6, subd. (c).)

To resolve the ambiguity in the statutory scheme created by the juxtaposition of sections 40215, subdivision (a) and 40200.5, subdivision (a), we "may consider a variety of extrinsic aids, including the apparent purpose of the statute. [Citation.]" (*Leonte, supra,* 123 Cal.App.4th at p. 527.) Where possible, significance is to be attributed to every word and phrase (*Orange County Employees Assn. v. County of Orange* (1991) 234 Cal.App.3d 833, 841), and sections or parts of a statute should be harmonized by considering them in the context of the statutory framework as a whole. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)

Particularly germane to our analysis are the initial revision of the relevant Vehicle Code provisions effective in July 1993 – sections 40200.5, 40200.6, 40200.7, 40215, and 40230—and certain revisions adopted in 1995.

c. *1993 Revision*

As we have noted, in 1993 the Legislature revised the Vehicle Code to remove parking citations from the criminal courts. The 1993 revision maintained the prior definition of a "processing agency" contained in section 40200.6, subdivision (a) ("If a contract is entered into pursuant to Section 40200.5, . . . 'processing agency' means the contracting party responsible for the processing of the notices of parking violations and notices of delinquent parking violations.") (Stats. 1986, ch. 939, § 15; see Stats. 1992, ch. 1244, §§ 12, 13.) It also contained an amended version of section 40200.5, which preserved the issuing agency's authority to contract with a processing agency ("an issuing agency may elect to contract with the county, with a private vendor, or with any other city or county issuing agency [with an exception not pertinent] . . . for the processing of notices of parking violations and notices of delinquent parking violations, prior to filing with the court pursuant to Section 40230"). (Stats. 1992, ch. 1244, § 12.)

In providing for an initial review of contested citations, the 1993 revision repealed former section 40200.7, and replaced it with a new statute of the same designation. The 1993 version of section 40200.7 provided in relevant part: "For a period of 21 days from the issuance of the notice of parking violation or 10 days from the mailing of the notice of delinquent parking violation, a person may request *review by the processing agency, or at the discretion of the processing agency, by the issuing agency*, of the issuance of a notice of parking violation or a notice of delinquent parking violation . . . ." (Stats. 1992, ch. 1244, § 14, italics added.)

The 1993 revision also repealed former section 40215 (stats. 1992, ch. 1244, § 25), and replaced it with a new version. Subdivision (a)(1) of the new version provided in relevant part: "(a) If a person contests a notice of parking violation or

17

a notice of delinquent parking violation, *the processing agency* shall do the following: [¶] (1) *The processing agency shall either investigate with its own records and staff or request that the issuing agency investigate the circumstances of the citation* with respect to the contestant's written explanation of reasons for contesting the parking violation. If, based upon the results of that investigation, *the processing agency* is satisfied that the violation did not occur or that the registered owner was not responsible for the violation, *the processing agency* shall cancel the notice of parking violation and make an adequate record of the reasons for canceling the notice. *The processing agency* shall mail the results of the investigation to the person who contested the notice of parking violation or the notice of delinquent parking violation." (Stats. 1992, ch. 1244, § 26, italics added.)

This version of section 40215 also provided for a second level administrative review in subdivision (b): "(b)(1) The person requesting an administrative review shall indicate *to the processing agency* his or her election for a review by mail or personal conference. [¶] . . . [¶] (3) The administrative review shall be conducted before an examiner designated to conduct the review by the issuing agency's governing body or chief executive office. [¶] In addition to any other requirements of employment, an examiner shall demonstrate those qualifications, training, and objectivity prescribed by the issuing agency's governing body or chief executive as are necessary and which are consistent with the duties and responsibilities set forth in this article. The examiner's continued employment, performance evaluation, compensation, and benefits shall not be directly or indirectly linked to the amount of fines collected by the examiner. [¶] . . . [¶] (5) The review shall be conducted in accordance with the written procedure established by the posing [*sic*] *or processing agency* which shall ensure fair and impartial review of contested parking violations. *The agency's* final decision may

18

be delivered personally to the person by the examiner or to the person by first-class mail." (Stats. 1992, ch. 1244, § 26, italics added.)

Finally, the 1993 revision added section 40230 to the Vehicle Code, which provided for judicial review of the result of the administrative hearing ("Within 20 days after the mailing of the final decision described in subdivision (b) of Section 40215, the contestant may seek review by filing an appeal to the justice or municipal court, where the same shall be heard de novo, except that the contents of the processing agency's file in the case shall be received in evidence…"). (Stats. 1992, ch. 1244, § 33.)

Considering these provisions of the 1993 legislation, the following salient points appear: (1) the Legislature authorized an issuing agency to contract with a processing agency for the processing of notices of parking violations (§§ 40200.5, 40200.6); (2) at the initial level of review of contested citations, it authorized the processing agency (or, at the processing agency's discretion, the issuing agency) to investigate the circumstances of the citation (§ 40215, subd. (a)(1)) and conduct the initial review (§ 40200.7), and gave the processing agency the authority to make the decision whether to cancel the citation (§ 40215, subd. (a)(1)); (3) at the level of administrative review, it permitted an administrative appeal from the processing agency's initial review decision, to be conducted by examiners of the processing agency meeting qualifications set by the issuing agency (§ 40215, subd. (b)); and (4)) it provided for de novo judicial review of the processing agency's administrative decision. (§ 40230.)[12]

_____

[12] Subsequent "'cleanup amendments'" effective in 1993 (*Lockheed, supra*, 17 Cal.4th at p. 194) made changes to certain details in sections 40200.5, 40200.7, 40215, and 40230 not material to the current issue. (See stats. 1993, ch. 1093, §§ 6 (amending

d. *1995 Amendments*

In 1995, the Legislature made several changes significant to our issue. First, it repealed section 40200.7, which had expressly provided that the processing agency may conduct initial reviews. (Stats. 1995, ch. 734, § 6.) Second, it repealed the former version of section 40215, which had given the processing agency the authority to investigate challenged citations. (Stats. 1995, ch. 734, § 15.) Third, it replaced the former version of section 40215 with a new statute of the same number. This new section 40215, subdivision (a) includes the provisions regarding initial review that are at issue in the present case, assigning responsibility for conducting the initial review to the "issuing agency," giving that agency the authority to determine whether to cancel the citation, and requiring it to inform the processing agency of its decision.[13] Fourth, the Legislature eliminated any reference to the authority of the "processing agency" to conduct the initial review and decide whether to cancel the citations. (Stats. 1995, ch. 734, § 15.) Finally, the new section 40215, subdivision (b) eliminated a provision requiring that notice of a request for an administrative review be given to the processing agency, and

§ 40200.5), 7 (amending § 40200.7), 10 (amending § 40215), and 13 (amending § 40230).) We therefore do not describe them.

[13] The 1995 version of section 40215, subdivision (a), as does the current version, states in relevant part that "a person may request an initial review of the notice by the issuing agency. . . . If, following the initial review, the issuing agency is satisfied that the violation did not occur, that the registered owner was not responsible for the violation, or that extenuating circumstances make dismissal of the citation appropriate in the interest of justice, the issuing agency shall cancel the notice of parking violation or notice of delinquent parking violation. The issuing agency shall advise the processing agency, if any, of the cancellation." (Stats. 1995, ch. 734, § 15.)

20

replacing it with language specifying that any second level administrative hearing would review the results of the *issuing agency's* initial review ("If the person is dissatisfied with the results of the initial review, the person may request an administrative hearing of the violation no later than 21 calendar days following the mailing of the results of the *issuing agency's initial review*.") (*Ibid.,* italics added.)

Legislative deletion of an express statutory provision "'is presumed to effect a substantial change in the law' [citation]." (*Barajas v. City of Anaheim* (1993) 15 Cal.App.4th 1808, 1814.) Considered in their entirety, the 1995 changes strongly suggest that by repealing section 40200.7 and former section 40215, and replacing them with a new section 40215, the Legislature intended to give sole authority to conduct the initial review to the issuing agency, and to preclude delegation of that duty to the processing agency. No other rational explanation comports with the breadth of the modifications eliminating references to the processing agency's authority.

Despite these sweeping changes, however, the 1995 amendments left an ambiguity: they did not amend section 40200.5 to reflect the elimination of the processing agency's authority to conduct the initial review. Section 40200.5 continued to provide, as it does now,[14] that the issuing agency could contract with a processing agency "for the processing of notices of parking violations and notices of delinquent parking violations, *prior to filing with the court pursuant to Section*

---

[14] Later amendments to section 40200.5 made minor changes not pertinent to our analysis. (Stats. 1996, ch. 305, § 74; stats. 2008, ch. 13, § 1.)

21

*40230.*" (Italics added.)[15] It thus might be read in isolation, without considering the 1995 changes, as suggesting that the issuing agency may contract with the processing agency to conduct the initial review under section 40215, subdivision (a), because that review occurs before the judicial review encompassed by section 40230. This failure to amend section 40200.5 to conform to the changes made by the 1995 legislation is the root of the ambiguity that appears when juxtaposing the current versions of sections 40215, subdivision (a) and 40200.5, subdivision (a).

However, given the history of the relevant statutes as we have traced them, it is unreasonable to conclude that by failing to amend section 40200.5, subdivision (a) to align it with the 1995 changes, the Legislature intended to leave in place the authority of the processing agency to conduct the initial review. Rather, in light of the specificity with which the 1995 amendments eliminated the authority of the processing agency to conduct any aspect of the initial review, and placed that authority on the issuing agency, the most rational explanation of the apparent inconsistency between sections 40215, subdivision (a) and 40200.5, subdivision (a) is that the failure to amend section 40200.5, subdivision (a) to comport with the 1995 changes was a legislative oversight. In other words, it is unreasonable to assume that by failing to amend section 40200.5, the Legislature intended to retain the authority of the processing agency to conduct the initial review and undo the changes it so clearly made in the 1995 amendments. Thus, we conclude that the most reasonable construction of the statutory scheme is that section 40215,

---

**15**     Section 40230 (as here relevant) was unaffected by the 1995 legislation, and continued to refer to the third level of review of a contested citations: judicial de novo appeal from "the final [administrative] decision described in subdivision (b) of Section 40215." (Stats. 1995, ch. 734, § 18.)

subdivision (a) means what it says. A request for initial review of a contested citation is a request for "an initial review of the notice by the *issuing agency*," not the processing agency, and "[i]f, following the initial review, *the issuing agency* is satisfied that the violation did not occur, that the registered owner was not responsible for the violation, or that extenuating circumstances make dismissal of the citation appropriate in the interest of justice, *the issuing agency* shall cancel the notice of parking violation" and "advise the processing agency, if any, of the cancellation." (§ 40215, subd. (a), italics added.) This language, and the 1995 changes deleting any reference to the processing agency's authority to conduct the initial review, compel the conclusion that the issuing agency (here, the City) must conduct the initial review, and cannot delegate that duty by contract to the processing agency (here, Xerox).

e. *Later Legislative History*

Our conclusion is further supported by legislative documents leading up to a 2008 amendment of section 40200.5.

In February 2007, AB No. 602 was proposed to amend section 40200.5. Analysis of AB No. 602 by the Assembly Committee on Transportation notes that existing law permitted local agencies issuing parking citations to contract with private vendors to process citations up to the point of seeking de novo court review, and permitted motorists challenging a citation "to request an initial review . . . by *the issuing agency*." (Italics added.) As proposed, AB No. 602 would have prohibited local governments from contracting with private vendors to conduct second level administrative hearings if the same vendor also processed parking violations on the theory that a vendor that earned a profit per ticket paid, and was also paid to conduct administrative hearings, had an inherent conflict of interest.

23

AB No. 602 was amended in June 2007. Notes from the Senate Rules Committee's third reading of AB No. 602 state that a person wishing to contest a parking citation could "request a free initial review by the issuing agency within 21 days." In addition, AB No. 602 would require a contract with a private entity for processing parking citations to be based on a fixed rate or on the number of notices processed, so there would be no financial incentive for fines collected or notices upheld, and would require a written reason following a denial an initial review or administrative hearing stating why a citation was not cancelled.

AB No. 602 was amended again in April 2008. The committee analysis reiterates that, among other things, the bill would require a processing entity to be paid on a fixed rate or based on the number of notices processed, and require a written statement as to why a citation was upheld following an initial review or administrative hearing. The Governor signed AB No. 602 in May 2008. Section 40200.5 as amended provides that if an issuing agency contracts with a private vendor for the provision of examiners for administrative hearings, the contract must "be based on either a fixed monthly rate or on the number of notices processed and shall not include incentives for the processing entity based on the number of notices upheld or denied or the amount of fines collected." (§ 40200.5, subd. (c).) As amended, section 40215 also requires a written reason for denial after initial review or administrative hearing, and made other changes not relevant here.

In determining the legislative purpose in amending a statute, the court considers the state of the law as it existed prior to the amendment. (*Hepner v. Franchise Tax Bd.* (1997) 52 Cal.App.4th 1475, 1481.) The development and history of AB No. 602 reflect that, before 1995, the Legislature believed a processing agency could perform initial reviews of parking citations. However,

24

after deleting section 40200.7 and amending section 40215 in 1995, the Legislature provided that only the issuing agency could conduct the initial review. This is persuasive authority of the Legislature's intent in amending section 40215. The California Supreme Court agreed, stating in dictum in *Lockheed,* that "the 1995 legislation . . . removed certain responsibilities from the purview of a contract 'processing agency.' The amendments require the issuing agency itself to conduct the 'initial review' (i.e., investigation and cancellation if appropriate) of a contested ticket and to set formal hearing procedures." (*Lockheed, supra*, 17 Cal.4th at p. 196.)

### f. *Conclusion*

In short, we agree with the trial court's interpretation of the statutory scheme: section 40215, subdivision (a) requires the City, as the issuing agency, to conduct the initial review of contested parking citations, and does not permit delegation of that duty to its processing agency, Xerox.

### C. *The Home Rule Does Not Apply*

The City contends that its right to "home rule" overrides the statutory scheme. We disagree.

Los Angeles is a charter city for purposes of "home rule" authority. (Cal. Const. art. XI, § 5(a).) A charter city "'ha[s] exclusive power to legislate over "municipal affairs."'" (*Cawdrey v. City of Redondo Beach* (1993) 15 Cal.App.4th 1212, 1218, citing *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 704.) The home rule represents "an 'affirmative constitutional grant to charter cities of "all powers appropriate for a municipality to possess . . ." and [includes] the important corollary that "so far as 'municipal affairs' area concerned," charter cities are

"supreme and beyond the reach of legislative enactment."'" (*State Building & Construction Trades Council of California v. City of Vista* (2012) 54 Cal.4th 547, 556.)

The home rule provision was enacted on the premise that a municipality is more aware than the state of its own needs. "[I]f a chartered city legislates with regard to municipal affairs the charter prevails over general state law" (*R & A Vending Services, Inc. v. City of Los Angeles* (1985) 172 Cal.App.3d 1188, 1192 (*R & A Vending Services*)), and its legitimate exercise of home rule is exempt from state general law. (*Home Gardens Sanitary Dist. v. City of Corona* (2002) 96 Cal.App.4th 87.)

The Legislature has characterized the processing of parking citations prior to an administrative hearing under section 40215, subdivisions (b) and (c) as a "core" municipal affair. (*Lockheed, supra*, 17 Cal.4th at pp. 183–184.) But *Lockheed* specifically declined to decide whether the administration of parking citations was a matter of home rule. (*Id*. at p. 202, fn. 22.)[16]

In the instant case, the trial court concluded that the administration of parking citations is a core municipal function for purposes of the home rule

---

[16]     The cases on which the City relies to support its argument that the home rule covers contracts that pertain to municipal affairs, are inapposite. (See *Associated Builders, supra,* 21 Cal.4th at p. 363; *Johnson v. Bradley* (1992) 4 Cal.4th 389, 394–398; *Estrada v. City of Los Angeles* (2013) 218 Cal.App.4th 143, 152–153.) None of these cases addresses the question at issue, i.e., whether a contract between a city and a private vendor is a *legislative act* covered by the home rule doctrine, even where the contract touches on municipal affairs. The cases support the undisputed principle that the manner ""'"in which a city chooses to contract is a municipal affair."'" (See *Associated Builders, supra*, 21 Cal.4th at p. 364.) Weiss has not challenged the City's authority to enact ordinances governing the manner by which it may or does enter a contract, or its ability to do so.

doctrine.  However, it also found that the doctrine of home rule applies only where "a chartered city *legislates* with regard to municipal affairs" in conflict with state law.  (*R & A Vending Services, supra*, 172 Cal.App.3d at p. 1192, italics added.) We agree.  The subject matter of the municipal affair at issue is governed by contract, not an ordinance.  The City has long outsourced its duty to perform initial review of parking citations by way of a contract, not pursuant to a municipal ordinance, regulation or provision of the City Charter.  No legislative act regulates the activity that can be characterized as a municipal affair for purposes of home rule.  Thus, as the trial court concluded, the home rule doctrine does not apply.

II.     *Attorney Fees*

The City and Xerox contend that Weiss is not entitled to attorney fees under Code of Civil Procedure section 1021.5.  We conclude otherwise.

A.     *The Standard of Review*

"On appeal from an award of attorney fees under section 1021.5, '"the normal standard of review is abuse of discretion. . . ."'  [Citations.]"  (*Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1025–1026 (*Serrano*).) Abuse of discretion standard means "we should not reverse unless 'the record establishes there is no reasonable basis' for the trial court's action.  [Citation.] Particularly in a case such as this, fully briefed and argued before the same trial court which heard (and partially granted) the petition, this is not an insignificant point."  (*Williams v. San Francisco Bd. of Permit Appeals* (1999) 74 Cal.App.4th 961, 965, disapproved on another point by *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1226, fn. 4 (*Whitley*).)

27

B.    *Private Attorney General Fe*es

"Section 1021.5 authorizes an award of fees when (1) the action 'has resulted in the enforcement of an important right affecting the public interest,' (2) 'a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons . . . ,' and (3) 'the necessity and financial burden of private enforcement . . . are such as to make the award appropriate . . . .' [Citations.]" (*Serrano, supra,* 52 Cal.4th at p. 1026.)  The party seeking fees must prevail on all the statutory requirements.  (*Satrap v. Pacific Gas & Electric Co.* (1996) 42 Cal.App.4th 72, 81.)  The third factor of Code of Civil Procedure section 1021.5 does not apply where, as here, a plaintiff's action produces no monetary recovery.  (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 934–935 (*Woodland Hills*).)  The purpose of the statute is to encourage private parties to vindicate important public rights that might otherwise lie fallow.  (*Punsly v. Ho* (2003) 105 Cal.App.4th 102,  109, disapproved on another point by *Whitley, supra,* 50 Cal.4th at p. 1226, fn. 4; *Nelson v. County of Los Angeles* (2003) 113 Cal.App.4th 783, 795 ["fundamental purpose of section 1021.5 . . . is 'to provide some incentive for the plaintiff who acts as a true private attorney general, prosecuting a lawsuit that enforces an important public right and confers a significant benefit, despite the fact that his or her own financial stake in the outcome would not by itself constitute an adequate incentive to litigate.'  [Citation.]"].)


1.    *Enforcement of Important Right Affecting Public Interest*

Code of Civil Procedure section 1021.5, permits a fee award ""''in any action which has resulted in the enforcement of *an important right affecting the public interest*" regardless of its source—constitutional, statutory or other.'  [Citation.]"

(*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 683 (*Folsom*).) In enacting section 1021.5, "the Legislature was focused on public interest litigation in the conventional sense: litigation designed to promote the public interest by enforcing laws that a governmental or private entity was violating, rather than private litigation that happened to establish an important precedent." (*Adoption of Joshua S*. (2008) 42 Cal.4th 945, 956.)

The City and Xerox contend that, to the extent Weiss may be said to have been successful in this litigation, the sole issue on which he prevailed—obtaining an order that only City personnel may conduct an initial review—falls short of being an "important" right. They underestimate the significance of the result.

In making its substantive mandamus determination, the trial court found that by his writ petition Weiss sought, among other things, to invalidate the City's long-standing policy of having a private vendor conduct initial review of contested parking citations issued by the City. Although Weiss initiated this action with grand ambitions—class action allegations and several additional claims and, as the court observed, the aim of eliminating the initial review procedure altogether—he achieved more modest success. Nevertheless, as the court also found, the limited nature of Weiss' success did not preclude a fee award; it merely required that any award Weiss received be reduced accordingly. (See *Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 394 (*Robinson*).) The court observed that, in California, the courts take a "broad, pragmatic view of what constitutes a 'successful party.'" (See *Graham v. DaimlerChrysler Corp*. (2004) 34 Cal.4th 553, 565.) The pivotal fact is the impact of an action, not how it is litigated. (*Folsom, supra*, 32 Cal.3d at p. 685.) A plaintiff may still recover Code of Civil Procedure section 1021.5 fees in an action deemed moot if the litigation objection has been achieved. (See *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311.)

29

At trial, Weiss was successful in obtaining injunctive and declaratory relief ending Xerox's unlawful but longstanding practice of conducting initial reviews, and compelling the City to comply with its statutory duty to perform that task. "[T]the public always has a significant interest in seeing that legal strictures are properly enforced . . . ." (*Woodland Hills, supra*, 23 Cal.3d at p. 939.) "In litigation concerning the application of statutorily based rights . . . determining the 'importance' of the particular 'vindicated' right, courts should generally realistically assess the significance of that right in terms of its relationship to the achievement of fundamental legislative goals." (*Id*. at p. 936; *Robinson, supra,* 202 Cal.App.4th at p. 394.)

The City and Xerox argue that the result of Weiss' litigation is unimportant, because the trial court concluded that the City's current system, under which Xerox conducts the initial review, is fair. From this finding, they extrapolate the conclusion that having the City conduct the initial review will not achieve any future benefit for motorists who challenge their parking citations. They also cite *Yagman v. Garcetti* (C.D. Cal., July 9, 2014) 2014 WL 3687279, in which the plaintiff filed a putative class action against various City officials objecting to the requirement that motorists deposit the parking fine in order to obtain administrative review of a contested citation. In dismissing the case, the district court rejected the plaintiff's apparent contention ("plaintiff seems to argue") that the City's initial review is not reliable because, among other things, "it is conducted by a company with whom the City contracts," reasoning "[i]f anything, that the review is conducted by a third party enhances fairness." (*Id*. at p. *2-3.)

But the City and Xerox's argument, and their reliance on *Yagman,* miss the point. Gauging the importance of the result achieved by Weiss' litigation lies not in whether it unearthed an unfair initial review system, or in whether review

30

conducted by the City will be any better (a result only the future will tell). It lies in whether, by placing the responsibility for conducting the initial review on the only agency authorized by the Legislature to conduct it, and taking it away from the agency whose previous authority the Legislature specifically eliminated, the result of Weiss' litigation enforced an important public right. In that light, it is difficult to imagine a more fundamental public right than that the tribunal deciding a litigant's fate, even a tribunal convened at the first level of review to determine whether a litigant is liable for a parking violation, be a tribunal properly convened under the law and authorized by law to make the decision.

That the current initial review procedure is fair speaks well of the City and Xerox's intent in implementing and using it. But the point of the litigation was to enforce an important public right. The Legislature has decreed, in effect, that Xerox has no power to conduct the review at all. In fiscal year 2013 alone, Xerox conducted 135,291 initial reviews, and did so in violation of section 40215, subdivision (a). The result of Weiss' litigation – an adjudication compelling the City to comply with its statutory duty to conduct the initial review, and precluding the illegal delegation of that duty to Xerox – ensures that the Legislature's policy of requiring the City to perform the initial review will be followed. Even though the current system manifested no unfairness, that result enforces an important public right affecting the public interest: only a tribunal convened by law and authorized to conduct the initial review will do so.


2.      *Significant Benefit Conferred on a Large Class*

The City and Xerox also maintain that the grant of writ relief did not confer a significant benefit on a large class of persons. Indeed, they insist it conferred no benefit even on Weiss himself. However, a significant benefit justifying an award

31

of private attorney general fees under Code of Civil Procedure section 1021.5 "need not represent a 'tangible' asset or a 'concrete' gain but . . . may be recognized simply from the effectuation of a fundamental constitutional or statutory policy." (*Woodland Hills, supra*, 23 Cal.3d at p. 939; *County of Colusa v. California Wildlife Conservation Bd.* (2006) 145 Cal.App.4th 637, 655 [same].)

Of course, the enforcement through litigation of a constitutional or statutory policy does not necessarily confer a significant public benefit. (*Woodland Hills, supra*, 23 Cal.3d at pp. 939–940.) The trial court found that by effectuating the proper interpretation of section 40215, subdivision (a), Weiss effected an important change because public policy favors the City's review of parking citations. The trial court reasoned that the City (which has constituents) is more accountable than is a private entity like Xerox. In light of the City's greater accountability and concomitant accessibility, members of the public are more likely to feel they will receive or have received a fair evaluation of a contest of a parking citation from a public agency charged with the nondelegable duty to review that challenge at the outset. In the end, the court had "little doubt" this action "conferred a significant benefit to a large group of people: motorists who park their cars in the City and receive a parking ticket. Those motorists will have the initial review of their parking tickets performed by the issuing agency," not Xerox, a private contractor or its subcontractor.

In addition, the claim that Weiss obtained nothing more than a "minor revision" of the system was belied by the actions of the City and Xerox. In successfully obtaining a stay pending the outcome of this appeal, the City and Xerox argued that the writ and judgment would necessitate a "complete changeover by requiring the City to perform the initial parking ticket review." As the trial court noted, "[t]his is hardly a minor procedural benefit."

32

In short, in upholding the award of attorney fees, we need go no further. The trial court's finding as to the second element of Code of Civil Procedure section 1021.5 was not an abuse of discretion. Inasmuch as we hold that the only two section 1021.5 factors at issue are satisfied,[17] we end our discussion here.

## DISPOSITION

The judgment is affirmed. Weiss is awarded his costs on appeal.

**CERTIFIED FOR PUBLICATION**


WILLHITE, J.


We concur:


EPSTEIN, P. J.                    COLLINS, J.

---

[17]     By not addressing the final factor, appellants impliedly concede that "'the necessity and financial burden of private enforcement are such as to make the award appropriate.'" (*Woodland Hills, supra*, 23 Cal.3d at p. 941.) In addition, neither appellant takes issue with the method of calculation or amount of the attorney fees awarded.