Filed 10/21/20  Park v. City of Sacramento CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JOHN PARK et al., | |
| Plaintiffs and Respondents, | C086871 |
| v. | (Super. Ct. No. 34-2016-80002438CUWMGDS) |
| CITY OF SACRAMENTO et al., | |
| Defendants; | |
| SACRAMENTO CASINO ROYALE, LLC, et al., | |
| Real Parties in Interest and Appellants. | |

The City of Sacramento (City) automatically revoked the cardroom license for Sacramento Casino Royale, LLC (Casino Royale) pursuant to a Sacramento city ordinance that requires automatic revocation when a cardroom has failed to operate for 90 days.  When the City subsequently reached a settlement with Casino Royale to

1

reinstate Casino Royale's cardroom license, John Park and other owners of competing cardrooms (collectively Park) filed a petition for writ of mandate challenging the settlement.[1]  The trial court granted the petition and issued a writ of mandate reinstating the revocation of Casino Royale's cardroom license, ruling that the City had a ministerial duty under the ordinance to revoke the license and the settlement is unauthorized and void.

Casino Royale now contends (1) Park does not have standing to maintain this action, (2) the City did not have a ministerial duty to reject Casino Royale's application and revoke its license, (3) the City's settlement with Casino Royale is not unauthorized and void, and (4) Park's claim of fraud lacks foundation and is irrelevant.

We conclude (1) Park has public interest standing to maintain this action, (2) the City had a ministerial duty to reject Casino Royale's application and revoke its license because Casino Royale failed to operate the cardroom for 90 days and the period was not tolled, (3) the City's settlement with Casino Royale is unauthorized and void, and (4) Park's allegations of fraud are not material to the outcome.

Accordingly, we will affirm the judgment.

## BACKGROUND[2]

Sacramento City Code (City Code) section 5.32.110(B) provides that a cardroom license is "automatically revoked" if the licensee "fails to maintain and continuously operate a cardroom for a period of ninety (90) consecutive days or more . . . ."  Under

---

[1]  Petitioners are John Park (the owner and president of Silver F, Inc.), Silver F, Inc. (which operates a cardroom in Sacramento), Clarke Rosa (owner and president of Capitol Casino, Inc.), and Capitol Casino, Inc. (which also operates a cardroom in Sacramento). The City is the respondent.  Real parties in interest are Sacramento Casino Royale, LLC, and its owners, James Kouretas, William Blanas, and The Faye E. Stearns Living Trust. The City notified this court that it has no interest in the appeal and would not be filing any briefs; therefore, the City has been removed as a party to this appeal.

[2]  Casino Royale's request for judicial notice, filed February 7, 2020, is granted.

City Code section 5.32.110(C), the automatic revocation is tolled "up to an additional eighteen (18) months" if "[a] complete application for license transfer under Section 5.32.170 is pending before the city manager." An application must include, among other things, "[t]he location and a description of the premises upon which the applicant proposes to conduct a cardroom and a statement of the property interest of the applicant in the premises as owner, lessee or otherwise. If premises is leased or rented, applicant shall submit a copy of the lease or rental agreement." (City Code, § 5.32.040(D), made applicable to transfer applications by City Code, § 5.32.170.)

Casino Royale had a license from the City to operate a cardroom in the Red Lion Hotel in Sacramento, as well as a gaming license from the California State Gambling Commission. But on November 3, 2014, the Department of Justice revoked Casino Royale's state license because Casino Royale did not have sufficient funds available to cover its liabilities. The Department of Justice also issued an emergency order requiring Casino Royale to immediately cease all gambling operations, and Casino Royale has not operated a cardroom since that day.

Brad Wasson, the City's Revenue Director, notified Casino Royale that its City license was at risk of being revoked on February 3, 2015 unless Casino Royale resumed operations and submitted a complete application for license transfer. On January 27, 2015, Casino Royale applied to transfer its license to a new location on Stockton Boulevard. The application stated that Casino Royale would lease the premises and that it would provide the lease to the City. Wasson received the application and emailed Casino Royale, asking "Do you have a lease for this location?" Casino Royale replied on January 29, 2015, saying it had "retained Jim Sullivan of the Sullivan Group to negotiate a potential lease for the relocation of Casino Royale," but the lease would not be finalized "until all required governmental approvals are received." Casino Royale gave Wasson what it called a letter of intent, dated September 29, 2014, which purported

3

to inform the owners of the potential cardroom location of the terms on which Casino Royale would be willing to lease the property.

On March 27, 2015, Wasson informed Casino Royale that its cardroom license had been automatically revoked because Casino Royale had not submitted a complete application for license transfer. Wasson explained that the statement of intent to lease a property did not toll the 90-day period because tolling requires the licensee to submit a copy of the lease or rental agreement.

Casino Royale appealed the revocation of its cardroom license to the Sacramento City Council. It argued that it had substantially complied with the relevant sections of the City Code for tolling and the City was estopped from determining that the application was not complete because, according to Casino Royale, Wasson had told Casino Royale the letter of intent was sufficient.

In 2016, Casino Royale negotiated a settlement with the Department of Justice concerning its state gaming license. The settlement allowed Casino Royale to avoid the effect of a state moratorium on new gaming licenses while Casino Royale finalized an anticipated sale of its assets.

After Casino Royale settled with the Department of Justice, the City Council assigned Casino Royale's appeal of the automatic revocation to an outside hearing examiner. However, before the hearing was scheduled to take place, Casino Royale and the City entered into a stipulated settlement. The City agreed to retract its determination that Casino Royale's application was incomplete and retroactively allow tolling of the 90-day period. Casino Royale agreed to submit a new application to transfer the cardroom license to a proposed buyer. The hearing examiner adopted the settlement and retracted the City's revocation of the cardroom license.

Park filed a petition for writ of mandate challenging the City's decision to reinstate Casino Royale's license, naming the City as respondent and Casino Royale as the real party in interest. (Code of Civ. Proc., § 1085.) After a hearing, the trial court

4

granted the petition, finding that the City had a ministerial duty to revoke Casino Royale's cardroom license and reject the transfer application, but the trial court cautioned, "[t]he effect of the writ is to reinstate the revocation of Casino Royale's license, pending resolution of Casino Royale's original appeal to the City. The court expresses no opinion on the merits of Casino Royale's appeal or how the City may address or decide that appeal beyond the holding of this order." (Fn. omitted.)

The trial court also declined to consider two issues raised in Casino Royale's appeal to the City because those issues, though raised at the hearing on the petition, were not raised in the petition or in the briefs. The issues were (1) whether Casino Royale substantially complied with the City Code, and (2) whether the City is estopped from claiming Casino Royale's application was incomplete. The parties do not present argument concerning why this court should consider these issues even though the trial court did not consider them. We therefore also decline to consider the issues because the theories were not raised properly in the trial court. (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12; *Save the Sunset Strip Coalition v. City of West Hollywood* (2001) 87 Cal.App.4th 1172, 1181, fn. 3.)

DISCUSSION

I

Casino Royale contends Park does not have standing to maintain this action.

Park sought a writ of mandate requiring the City to enforce its ordinance automatically revoking a cardroom license. The trial court determined that Park did not have a beneficial interest in the relief sought, and, therefore, did not have standing to maintain the action under Code of Civil Procedure section 1086. However, the trial court concluded Park has standing under the public interest exception to the requirement of a beneficial interest.

" ' "[W]here the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the [petitioner] need not show that he has

5

any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced." ' [Citation.] This ' "public right/public duty" exception to the requirement of beneficial interest for a writ of mandate' 'promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right.' [Citations.] We refer to this variety of standing as 'public interest standing.' [Citation.]" (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155 166 (*Save the Plastic Bag*).)

In its order after hearing, the trial court acknowledged that not all litigants may proceed against a government entity as a matter of right and that the policy underlying public interest standing may be outweighed by competing interests that are more urgent. (*Save the Plastic Bag, supra,* 52 Cal.4th at p. 170, fn. 5.) "However," the trial court continued, "neither the City nor Casino Royale suggests any competing interests here that outweigh granting [Park] standing to bring this action. Indeed, when the City adopted its Code regulating cardrooms, it declared these conditions were 'necessary to ensure that cardrooms are operated reasonably for the protection of the public health, safety, and welfare.' ([City Code,] § 5.32.030.) The City offers no explanation why the public's interest in enforcement of these provisions regulating cardrooms is not sufficiently important to confer standing."

Casino Royale's challenge to the trial court's determination of public interest standing fails because Casino Royale does not acknowledge the trial court's discretion in granting public interest standing (*Reynolds v. City of Calistoga* (2014) 223 Cal.App.4th 865, 875), nor does it advance a compelling argument as to how the trial court abused such discretion. In any event, the trial court's exercise of discretion in granting public interest standing is consistent with precedent. For example, the trial court may exercise its discretion and allow an individual to assert public interest standing to demand a city's compliance with its statutory duty to conduct an initial review of challenged parking

6

citations before they are processed by an outside vendor. (*Weiss v. City of Los Angeles* (2016) 2 Cal.App.5th 194.) " 'The exercise of jurisdiction in mandamus rests to a considerable extent in the wise discretion of the court.' [Citations.]" (*Id*. at p. 205.)

Casino Royale argues Park is a competitor seeking to obtain Casino Royale's cardroom license. Casino Royale cites *Save the Plastic Bag, supra,* 52 Cal.4th at p. 170, fn. 5, and writes: "Where, as here, the assertion of public interest is based on personal objectives, rather than a broader public interest, a court may decline to apply the [public interest] exceptions." This statement serves only to emphasize the discretionary nature of granting public interest standing because Casino Royale acknowledges "a court *may* decline to apply the exceptions." (Italics added.) Here, the trial court exercised its discretion and found standing.

We agree with the trial court that the City's declared reason for enacting the cardroom ordinances to ensure that they are "operated reasonably for the protection of public health, safety, and welfare" (City Code, § 5.32.030(A)) sufficiently establishes a public interest, shared by Park, in the City's strict compliance with the City Code. There is a strong public interest in the proper regulation of gambling in this state. (*Oliver v. County of Los Angeles* (1998) 66 Cal.App.4th 1397, 1402, fn. 3.)

Accordingly, we conclude the trial court did not abuse its discretion in finding that Park has public interest standing to maintain this action.

Park argues he was beneficially interested in the relief sought and therefore had standing under Code of Civil Procedure section 1086, contrary to the holding of the trial court. Given our conclusion that the trial court did not abuse its discretion in finding public interest standing, we need not consider Park's argument.[3]

---

[3] Casino Royale asserts, in its reply brief, that Park cannot raise this issue because he did not appeal. To the contrary, "[t]he respondent . . . may, without appealing from such judgment, request the reviewing court to and it may review [the trial court proceedings]

Casino Royale next argues the City did not have a ministerial duty to reject Casino Royale's application and revoke its license.

"An ordinary mandamus action under Code of Civil Procedure section 1085 permits judicial review of ministerial duties as well as quasi-legislative acts of public agencies. [Citation.] Mandamus lies to compel the performance of a clear, present, and ministerial duty . . . . [Citation.]" (*Carrancho v. California Air Resources Board* (2003) 111 Cal.App.4th 1255, 1264-1265.) In this action, Park sought to compel the City to perform a clear, present, and ministerial duty -- that is, reject Casino Royale's bid to reinstate its cardroom license.

Our review of the trial court's ruling is de novo because this case involves interpretation and application of City ordinances to material facts that are not in dispute. (*Saathoff v. City of San Diego* (1995) 35 Cal.App.4th 697, 700) Nevertheless, we summarize the trial court's ruling because it correctly interpreted the ordinances and properly applied the law to the facts.

The trial court determined that the City had a mandatory, ministerial duty to automatically revoke Casino Royale's license because Casino Royale did not operate the cardroom for a 90-day period (City Code, § 5.32.110(B) and did not meet any of the conditions for tolling that period, including submission of a transfer application (City Code, § 5.32.110(C)). Consequently, the City could not exempt Casino Royale from the effect of these ordinances.

There was no dispute that Casino Royale failed to operate its cardroom for a 90-day period. Operations ceased at the cardroom in November 2014, and the cardroom has not operated since then. The disputed issue is whether the 90-day period was tolled under

for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken." (Code Civ. Proc., § 906.)

City Code section 5.32.110(C), which requires a complete application for license transfer to effectuate tolling. The trial court determined that Casino Royale did not submit a complete application because Casino Royale did not include in the application "a statement of the property interest of the applicant in the premises as owner, lessee or otherwise" under City Code section 5.32.040(D).[4]

The trial court determined that the letter of intent to lease the property did not constitute a statement of Casino Royale's property interest because the letter of intent did not include, in the trial court's words, "a legally enforceable right to possess and use the premises either presently or in the future." The letter of intent expressly stated it was not binding and did not create legal rights or obligations.

The trial court also rejected Casino Royale's argument that the ordinance requiring a statement of the applicant's property interest gave the City discretion to determine the type of property interest it would accept as part of the application. The trial court wrote: "There must . . . be a property interest -- i.e., some type of legally enforceable right to occupy the premises either presently or in the future." The trial court further rejected Casino Royale's argument that the ordinance only required a statement of the property interest the applicant hoped to acquire. As for Casino Royale's argument that it is not reasonable to require an applicant to acquire a property interest before the application is approved, the trial court responded that the wisdom of the city ordinance was not before the court, only the question whether Casino Royale established eligibility for tolling under the ordinance.

Finally, the trial court considered Casino Royale's argument that the City has historically not required the applicant, at the time of the application, to have a property

---

[4] The trial court also ruled that City Code section 5.32.040(D) did not require Casino Royale to submit a copy of a lease it did not have. Park does not dispute this aspect of the ruling.

interest in the property where the cardroom is to be operated. Acknowledging that a municipality's contemporaneous interpretation of an ordinance is entitled to great weight (*City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1087 (*City of Monterey*)), the trial court noted that the City's interpretation of whether City Code section 5.32.040(D) requires an existing property interest "has vacillated." The City initially determined Casino Royale's application was incomplete because the ordinance required a statement of an existing property interest, but the City later adopted a different interpretation when faced with Casino Royale's appeal to the city council. This vacillating interpretation was not entitled to deference under *Yamaha Corp. of America v. State Board of Equalization* (1998) 19 Cal.4th 1, 13.

The trial court also considered evidence presented by Casino Royale concerning the City's historical approach to applications, but it found the evidence inconclusive. The trial court summarized this evidence as follows:

"Casino Royale's evidence tends to show it submitted an application in mid-2012 to transfer its cardroom from 2052 Auburn Boulevard to the Red Lion Inn located at 1401 Arden Way. Shortly thereafter, it decided to move to the Red Lion Hotel located at 500 Leisure Lane. It did not have a lease, an option to lease or any other property interest in the 500 Leisure Lane premises while its application was pending. The City approved the application in November 2012, and thereafter Casino Royale enter[ed] into a lease for the premises in May 2013. [Record citations.]"

The trial court also considered Park's evidence that the City's application form formerly included a space for the owner of the property to sign, acknowledging consent for the property to be used for a cardroom and that, when Casino Royale applied to open a cardroom in 2007, it had an option to lease the property.

The trial court concluded: "This limited evidence . . . is not sufficient to overcome the plain language of the Code." The trial court continued: "In the absence of clear evidence of the City's past practices or interpretation, the court returns to the language of

10

the City's Code itself. Based on the plain language of the City Code and the generally understood meaning of the term 'property interest,' the court finds Casino Royale did not have a property interest in the premises it hoped to occupy when it submitted its application to transfer its license. Casino Royale's application was thus not complete. Because its application was not complete, the revocation of the license for failure to operate for 90[] days was not tolled. [¶] Since the City Code provides revocation is 'deemed automatic' in this circumstance, the City had a mandatory, ministerial duty to revoke Casino Royale's license. ([City Code,] § 5.32.110(B).)"

We agree with the trial court's conclusions. Because Casino Royale did not operate its cardroom for 90 days, automatic revocation of its license was required by City ordinance in the absence of tolling, and there was no tolling under the ordinances because Casino Royale did not submit the type of complete application specified by the ordinances to effectuate tolling.

Casino Royale nevertheless argues the trial court erred because (A) the trial court failed to recognize that the language of the ordinance gives the City discretion concerning what to accept as a statement of property interest, (B) the trial court discounted the City's approval of Casino Royale's move to Leisure Lane without an existing property interest, and (C) the trial court relied on a provision of the City Code that did not yet exist when the City rejected Casino Royale's application as incomplete. We address each argument in turn.

A

The City Code expressly provides that an application for a cardroom license, including an application to transfer a cardroom, must include "[t]he location and a description of the premises upon which the applicant proposes to conduct a cardroom and a statement of the property interest of the applicant in the premises as owner, lessee or otherwise. If premises is leased or rented, applicant shall submit a copy of the lease or rental agreement." (City Code, § 5.32.040(D).)

11

Casino Royale argues this language allows an applicant to submit a statement of the property interest it intends to obtain because the terms in the ordinance are not defined and the timing of the property interest is not addressed in the ordinance. Casino Royale notes that the terms "property interest" and "or otherwise" are not defined and argues that the City therefore had discretion to accept statements of intended property interests. We find this argument unconvincing for the same reasons given by the trial court. A "property interest" is an enforceable right to possess or use property presently or in the future, and it does not include a future or potential interest that is not legally enforceable. (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 319 [the property interest must be a " 'legitimate claim of entitlement,' " not a desire or expectation].) Property interests may include ownership, leasehold, or option, to name a few. Casino Royale provides no authority that an unenforceable letter of intent can be deemed a property interest, whether or not the term "property interest" was defined in the ordinances.

The same is true of the phrase "a statement of the property interest of the applicant in the premises as owner, lessee *or otherwise*." (City Code, § 5.32.040(D), italics added.) If it is other than ownership or a leasehold, it must still be a property interest. The addition of "or otherwise" does not redefine what is a property interest.

Casino Royale also argues that "the issue is one of timing." To the contrary, as noted, a property interest is an existing, legally enforceable right. The ordinance does not use a term to modify "property interest" such as future or expected. Accordingly, the plain language of the ordinance requires the applicant to include a statement of an existing property interest, which Casino Royale did not do. As the trial court wrote, the letter of intent submitted by Casino Royale was, at most, an offer; it did not create a legally enforceable right.

B

Casino Royale next argues we are somehow bound to the City's prior interpretation of the term "property interest" because the City did not require a statement

12

of an existing, legally enforceable right when Casino Royale submitted its 2012 application to transfer to Leisure Lane. In support, Casino Royale cites precedent that the City's contemporaneous construction of the ordinance is entitled to great weight (see *City of Monterey, supra,* 215 Cal.App.4th at p. 1087) and the evidentiary presumption that official duty is performed (Evid. Code, § 664). However, ultimately, interpretation of the ordinance is a judicial function, and an interpretation that does not comport with the language of the ordinance does not merit deference. (*City of Monterey,* at p. 1087.)

## C

Casino Royale further finds fault with the trial court's citation of an ordinance that Casino Royale claims did not exist at the time it applied for transfer of its cardroom license. In a footnote in its order after hearing, the trial court noted that City Code section 5.32.060(C) states the City "shall not grant a cardroom license if the applicant does not submit a complete application . . . ." When this provision was added to the City Code is not self-evident, and Casino Royale gives no authority for its assertion. (*Citizens for Positive Growth & Preservation v. City of Sacramento* (2019) 43 Cal.App.5th 609, 629-630 [failure to support assertion with citation to authority forfeits claim].) In any event, the assertion is without merit because, under City Code section 5.32.110(C), the automatic revocation of a cardroom license is tolled "up to an additional eighteen (18) months" if "[a] complete application for license transfer under Section 5.32.170 is pending before the city manager." The trial court's citation to City Code section 5.32.060(C) was unnecessary to the ruling.

## III

In addition, Casino Royale asserts that the settlement is not unauthorized or void.

The trial court determined that the settlement between the City and Casino Royale, which effectively relieved Casino Royale of the automatic revocation of its cardroom license, was an ultra vires act because "the effect of the settlement was to exempt Casino

13

Royale from [the provisions] of the City Code." On appeal, Casino Royale renews its argument that the settlement is not ultra vires.

"An agreement [between a municipality and another party] is ultra vires when it contractually exempts settling parties from ordinances and regulations that apply to everyone else and would, except for the agreement, apply to the settling parties." (*Summit Media LLC v. City of Los Angeles* (2012) 211 Cal.App.4th 921, 937 (*Summit Media*); see also *Trancas Property Owners Association v. City of Malibu* (2006) 138 Cal.App.4th 172, 181-182.) In *Summit Media*, the City of Los Angeles settled with two outdoor advertising companies, allowing them to alter billboards even though the alteration of the billboards was prohibited by municipal ordinances. The court determined that the settlement was ultra vires and void because it allowed the alteration of billboards in violation of municipal ordinances. (*Summit Media,* at pp. 934-937.)

Casino Royale claims *Summit Media* does not control here because the ordinance at issue in *Summit Media* "went to the heart of the public entity's police and regulatory powers and the settlement[ in *Summit Media*] provided exemptions to those substantive matters." Casino Royale argues that, in contrast, the ordinances at issue here were merely procedural rules. Casino Royale offers no authority for this distinction between substantive and procedural ordinances, and we see no reason to distinguish them. The result of the City's settlement was to relieve Casino Royale of the mandatory consequences of failing to operate a cardroom for a 90-day period, whereas all other cardrooms are subject to those consequences. Therefore, the settlement was ultra vires and void.

Casino Royale argues that use of the word "shall" in City Code section 5.32.040 does not render the provision mandatory. City Code section 5.32.040 states, in relevant part: "The application shall include . . . [¶] . . . [¶] . . . a statement of the property interest of the applicant in the premises as owner, lessee or otherwise." In support, Casino Royale cites to cases that concluded the use of the word "shall" in the statutes under

14

consideration did not render the provision obligatory because the legislative intent was not to make the provision obligatory. In those cases, the courts explained why the context and wording of the statute supported a conclusion that the provision was merely directory or permissive. (*Gananian v. Wagstaffe* (2011) 199 Cal.App.4th 1532, 1540; *Cal-Air Conditioning, Inc. v. Auburn Union School District* (1993) 21 Cal.App.4th 655, 673.) Here, on the other hand, Casino Royale makes no attempt to show how the context and wording of the ordinance support a conclusion that it is permissive rather than obligatory. The argument therefore fails.

The trial court did not err in finding that the City's settlement with Casino Royale was ultra vires and void.

IV

Casino Royale further contends Park's claim of fraud lacks foundation and is irrelevant.

In the trial court, Park moved to introduce evidence that Casino Royale's letter of intent to lease property was fraudulent. The proffered evidence was that the letter of intent was never actually sent to the owner of the property and there were no substantive conversations with the owner about Casino Royale leasing the property. Park alleged the letter of intent was a sham and urged the trial court to consider the alleged fraud in its decision. The trial court declined to consider the evidence, stating that the evidence came to light after the City entered into the settlement with Casino Royale.

Casino Royale now urges us to disregard the evidence that the letter of intent was fraudulent, whereas Park argues this court should take it into consideration and conclude the letter of intent was a sham. Because the trial court did not consider the evidence and it is unnecessary to our decision, we also decline to consider it. Even assuming the letter of intent was not a sham, it did not purport to give Casino Royale a property interest in the location to which it desired to transfer its cardroom.

15

DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

/S/
MAURO, J.

We concur:

/S/
BLEASE, Acting P. J.

/S/
HULL, J.

16